In re FIELD.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

EMINENT DOMAIN—DAMAGES—BENEFITS—DISPROPORTIONATE INJURY.

Where a pond used only for pleasure boating and fishing was entirely
surrounded by the lands of private owners, and a neighboring village
desired to extend its main street to the end of the pond on a course
which would pass through the garden of a private owner abutting on
the pond, who offered the village a free right of way to the pond a few
rods out of the direct course, the laying out of the highway as pro-
posed would not be allowed, inasmuch as the damage to the owner would
be out of all proportion to the benefit attained.

Motion by Ernest L. Field for an order confirming an order of the
Suffolk county court confirming an order of commissioners on an ap-
plication to lay out a highway.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ. .

Robert S. Pelletreau, for the application.
Howard Van Sinderen, opposed.

WOODWARD, J. This is a proceeding under the highway law
(Laws 1890, c. 568) for the opening of a highway, and because it is
proposed to run the road through the house and garden of the land-
owner, without his consent, the commissioners of highways are re-
quired to present the case to this court, and procure the confirmation
of the order of the county court, before the highway can be laid out.
Highway Law, § 90. There is no question raised as to the regular-
ity of the proceedings in all things, but the landowner, who is award-
ed $500 damages, urges that this court should not confirm the order
of the county court. In the town of Easthampton, Suffolk county, is
a pond known as "Georgica Pond." This body of water covers an
area of from 400 to 600 acres, and lies so close to the Atlantic Ocean
that the sand barriers between them are broken down at intervals,
when the tide ebbs and flows in the pond in harmony with the flow
of the tides in the neighboring ocean. It is fed by springs and
streams, but all of the evidence indicates that it is merely a lagoon,
and constitutes a part of the territory given over to the dominance of
the ocean, though the town of Easthampton claims title to the pond,
and there is a suggestion in the evidence that the premises of riparian
owners extend to the middle of the pond; but we are unable to dis-
cover any good title to the land under the water, in so far as the ad-
jacent owners are concerned. It is certain that for many years this

pond has been a common fishing, eeling, and crabbing ground for the people of Easthampton, and that it has been largely used as a pleasure resort, and for the sailing of light-draught craft. In recent years there appears to have been an influx of summer residents, and ill-advised pretensions to dominion over the pond on the part of individuals have excited the apprehensions of others, who have succeeded in diffusing a sentiment throughout the community of Wainscott, a hamlet of about 100 inhabitants, which demands a highway to this pond, its surroundings being entirely owned by private individuals. This proposed highway is an extension of Main street in the village of Wainscott, and is almost wholly confined to the premises of one William H. S. Wood, who purchased the premises some 20 years ago, occupying a portion of the proposed highway, at one time a private roadway, with a house and garden, which brings the matter within the jurisdiction of this court. From the evidence before the commissioners, it appears that the summer residents, who have purchased property bordering upon this pond, are nearly equal in numbers to those of the adjacent village, and these are very generally opposed to the proposed highway, as there is a well-grounded suspicion that there is back of the matter a determination on the part of the Wainscott people to continue the highway at another time across the pond, which would somewhat shorten the distance to one of the neighboring hamlets, and in this manner practically ruin the pond for boating purposes. This view of the matter is strengthened by the conduct of the promoters of this proposed highway, who were offered a free right of way to the open waters of the pond by Mr. Wood if they would consent to abandon this particular route, which cuts his property into two parcels, and seriously interferes with its value as a summer residence site. This court is committed to the proposition that the people of this locality have a right to have the highways extended to this pond (In re Town of East Hampton, 21 App. Div. 623, 47 N. Y. Supp. 269), but they have no natural right to wantonly destroy property values, when the practical result can be reached without doing material injury to any one; and while it is urged that the highway, ending at Goose creek, would not make an available landing place at all times, there is no evidence that the right of way offered by Mr. Wood would not accomplish all that is urged in the support of the contention of necessity, upon which the entire proceeding rests. No one claims that a highway is necessary here to enable the community to reach the markets or the railroads. The entire claim of necessity is that the people should have a means of reaching this pond without being obliged to trespass upon private property; and they have no right, upon such a necessity, to impose any burdens upon others which are not required to meet this demand. The community's right to take private property for public purposes is limited by the reasonable necessities of the community. It has no moral right to wrong the owner of property all out of proportion to the result to be accomplished; and we are persuaded, from an examination of the whole question, that every right of the people of Wainscott may be preserved at a much less expense to themselves, and with greater satisfaction to the community as a whole, without working this injury to an individual

landowner, who has evidenced a disposition to afford all that is de-
manded,—a right of way to this pond, which should be accessible to
all.   The question of a few rods' increase in distance has never been
known to deter the fisherman, or to dampen the ardor of an eeler,
nor to set unreasonable bounds to the enthusiasm of the searcher aft-
er crabs; and, as the waters of the pond are not available for pro-
ducing ice, watering cattle, or domestic purposes, the question of pub-
lic convenience is reduced entirely to these occupations, with a little
incidental sailing.   There appears to be no objection to the highway
as far as Goose creek.   It might be extended along that arm of the
pond to a point where deep water would be assured at all times; but
to arbitrarily carry it entirely across the premises of Mr. Wood, to
serve no higher utility than that suggested in the proceeding now be-
fore us, is to make use of the law to do an injustice all out of propor-
tion to the necessities of the case.   The statute has imposed upon
this court the duty of determining for itself whether the facts justify
the sacrifice proposed, and we shall best discharge that duty by re-
fusing to confirm the order of the county court.

The motion to confirm the order of the county court should be de-
nied, with costs.   All concur.