[No. 9611.  Department Two.  July 14, 1911.]

THE STATE OF WASHINGTON, *on the Relation of the Postal Telegraph-Cable Company, Plaintiff*, v. THE SUPERIOR COURT FOR GRANT COUNTY, *R. S. Steiner, Judge, et al., Respondents.*[1]

EMINENT DOMAIN—NECESSITY FOR ROUTE—TELEGRAPH LINE.  In condemnation proceedings for a telegraph line, the selection of a general route is conclusive as to the necessity of such route, but the issue is presented whether the particular land sought is a necessary part of the general route adopted.

EMINENT DOMAIN—STATUTES—CONSTRUCTION.  Statutes of eminent domain being in derogation of common right, are strictly construed.

EMINENT DOMAIN—NECESSITY—DETERMINATION — JUDICIAL QUESTION.  Rem. & Bal. Code, § 925, providing that lands may be condemned if the court shall be satisfied by competent proof that the land sought to be appropriated is necessary for the enterprise, invests the court with power to determine whether the specific land sought is necessary in view of the general location or in the event of bad faith or abuse of power in selection.  .

EMINENT DOMAIN — NECESSITY — EVIDENCE — BURDEN OF PROOF.  While the selection of a route is evidence of the highest character of the necessity therefor, the same is overcome by convincing evidence that the land selected is not reasonably necessary to the general route, and that a slight change of location will· equally meet the necessity and do less damage to the owner; and in the absence of any rebutting evidence, the condemnation should be refused.

EMINENT DOMAIN—NECESSITY—EVIDENCE—ADMISSIBILITY.  Where a telegraph company was a trespasser in setting up its poles, the cost of their removal cannot be considered upon an issue as to the necessity for condemning an easement for the line.

CROW, J., dissents.

Certiorari to review a judgment of the superior court for Grant county, Steiner, J., entered April 14, 1911, dismissing an action to condemn a·right of way for the erection and operation of a telegraph line.  Affirmed.  .

[1]Reported in 116 Pac. 855.

*Hughes, McMicken, Dovell & Ramsey,* for relator, con-
tended, among other things, that unless a corporation acts
in bad faith, its discretion in the selection of its route can-
not be controlled by the courts.    2 Lewis, Eminent Domain
(3d ed.), § 604; 10 Am. & Eng. Ency. Law (2d ed.), pp.
1057, 1058; *State ex rel. Clark v. Superior Court,* 62 Wash.
612, 114 Pac. 444; *Postal-Telegraph-Cable Co. v. Oregon
S. L. R. Co.,* 23 Utah 474, 65 Pac. 735, 90 Am. St. 705;
*Union Pac. R. Co. v. Colorado Postal Tel. Cable Co.,* 30
Colo. 133, 69 Pac. 564, 97 Am. St. 106; *Terre Haute & P.
R. Co. v. Robbins,* 247 Ill. 376, 93 N. E. 398; *Colorado
Southern, N. O. & P. R. Co. v. Boagni,* 118 La. 268, 42
South. 932; *City of Dalles v. Hallock,* 44 Ore. 246, 75 Pac.
204; *Kansas & T. Coal R. Co. v. Northwestern Coal & Min.
Co.,* 161 Mo. 288, 61 S. W. 684, 84 Am. St. 717, 51 L. R. A.
936.

*Reneau & Clapp* and *Aust & Terhune,* for respondents.

ELLIS, J.—The relator instituted proceedings in the su-
perior court of Grant county to condemn an easement to erect,
construct, maintain and operate a telegraph line across the
south half of the southeast quarter of section twenty-seven,
township sixteen, north, of range twenty-five, E., W. M., in
Grant county, Washington, now owned by respondents
Lelia M. and W. P. Keady. The Milwaukee Land Company
was dismissed from the action by stipulation. The amended
petition alleges that the petitioner is engaged in the construc-
tion, maintenance, and operation of a telegraph line between
Seattle and Spokane, and that it is necessary for that purpose
to condemn a perpetual easement to erect nineteen telegraph
poles, cross-arms, and wires strung thereon across the above
described land. The petitioner prays that a jury be em-
paneled to ascertain the damages. At the hearing by the
court on the questions of public use and necessity for the tak-
ing, the following facts appeared: The land is high grade
agricultural land, valuable for fruit raising, and respondents .

expect to· devote it to that use.    It is irrigable, and an irrigation ditch has already been constructed thereon.    The right of way of the Chicago, Milwaukee & Puget Sound Railway Company crosses the land in a wide curve, running in an easterly and westerly direction through the southern portion thereof at a distance of 220 to 270 feet from the south line of the tract.    The right of way is fenced.

Sometime during the summer or fall of 1910 the relator, without any right and without the knowledge or consent of respondents, went upon the land and erected thereon nineteen telegraph poles with cross-arms and wires strung thereon, and a guy wire from one of the poles.    The record as to the actual location of the poles is hardly intelligible.    It contains no plat showing their location, either with reference to the lines of the land or of the railroad right of way, or with reference to other parts of the relator's telegraph line.    The only plat shown is that of the railroad right of way, the pole line not being indicated thereon.    Witnesses in testifying with reference to this plat, and counsel in referring thereto, did so by indicating "here" and "there," all of which was doubtless plain enough to the trial court, but is far from lucid on a review of the written evidence.    Another map was also used at the trial, but it does not appear in the record.    We are able, however, to gather from the oral testimony and the admissions in the briefs and in the argument, that pole No. 1 is located about fifty feet north of the north line of the railroad right of way; that pole No. 4 is located about sixty feet north of that line; that pole No. 11 is about four feet north of that line; that poles Nos. 5 to 11, both inclusive, are in practically a straight line, running from pole No. 4 to pole No. 11; and that poles 11 to 19, both inclusive, are all within about four feet of the north line of the railroad right of way; that there is an angle in the line at pole No. 4 necessitating a guy wire; and that the general direction of the telegraph line follows the right of way of the railroad, but in crossing

respondents' land it departs therefrom for a part of the way a distance of from fifty to sixty feet.

Respondents introduced evidence to show that they, either shortly before or shortly after the beginning of the action, offered relator a right of way free of cost, running along the north side of the railroad right of way and distant therefrom about four feet, if relator would move the poles to that location; that such a line would be a shorter line and more direct for relator and would be of little damage to respondents' land; that the poles set as they now are cause a great damage to the land, cutting it in strips between the irrigation ditch and the railroad right of way, greatly reducing its value for the growing of fruit trees. Relator offered nothing to rebut this evidence, apparently relying on the fact that the poles being placed as they are is conclusive evidence of the necessity of that location, and that evidence of a more direct, equally feasible, less expensive line across respondents' land, less damaging to the land, and equally meeting relator's necessities, was not admissible. The court dismissed the action on the ground that it was not satisfied from the evidence that the land sought to be appropriated is required and necessary for the purpose of the enterprise, but that, on the contrary, the court was satisfied from the evidence that there was no reasonable necessity, and no necessity at all for imposing the damage upon the respondents that would follow the location of the pole line on the specific route indicated in the petition. The record is brought here by certiorari to review this action of the court.

The relator contends that it made a case of necessity by showing that it was a duly organized telegraph company and that it had built its line on the right of way it was seeking to condemn; that mere proof that it had selected such route was sufficient to make a *prima facie* case of necessity in the absence of bad faith.

The adoption of the general route is an inseparable incident of the general enterprise. In the nature of the thing such

adoption, in connection with and as a part of the enterprise, when made in good faith, must be held conclusive of the necessity of such general route. The issue as to the necessity of any specific land, however, arises in each instance when, in the development of the general enterprise, condemnation of specific land is sought as a part of such general route. The issue is then presented, Is the particular land necessary as a part of the general route so adopted, or may not other land be taken with equal benefit to the enterprise and with less injury to the owner? It is in the determination of this issue that the real question in this case arises; namely, whether the matter of necessity was a legislative question delegated absolutely to the relator, or a judicial question to be determined by the court. Statutes of eminent domain being in derogation of the common right must be strictly construed, both as to the extent of the power and as to the manner of its exercise. *Fork Ridge Baptist Cemetery Assn. v. Redd,* 33 W. Va. 262, 10 S. E. 405; *Seattle v. Fidelity Trust Co.,* 22 Wash. 154, 60 Pac. 133; *Spokane v. Colby,* 16 Wash. 610, 48 Pac. 248; *State ex rel. Attorney General v. Superior Court,* 36 Wash. 381, 78 Pac. 1011.

The statute of this state prescribing procedure for the exercise of this power by private persons and corporations, after stating that the court shall first have satisfactory proof of the things necessary to confer jurisdiction, continues:

"And shall be further satisfied by competent proof that the contemplated use for which the land, real estate, premises or other property sought to be appropriated is really a public use, or is for a private use for a private way of necessity, and that the public interest requires the prosecution of such enterprise, or the private use is for a private way of necessity, and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the purposes of such enterprise, the court or judge thereof may make an order, to be recorded in the minutes of said court, directing the sheriff to summon a jury." Rem. & Bal. Code, § 925.

7—64 WASH.

The judicial determination of the last of the things enumerated is as plainly reposed in the court as is the determination of the other two. We cannot assume that the required proof as to necessity applies only to private ways of necessity. The provision as to such ways was inserted by the amendment of 1897 (Laws 1897, p. 63). The provision requiring the court to be satisfied by competent proof that the land etc., is necessary to the enterprise was a part of this section before it contained any reference to private ways of necessity (Laws 1890, p. 297). The statute, therefore, as applied to the question here involved, provides that, "If the court or judge thereof . . . shall be. further satisfied by competent proof . . . that the land, real estate, premises, or other property sought to be appropriated are required and necessary for the purposes of such enterprise," the preliminary order may be made and a jury summoned. Terms more apt for referring this question to the court or judge for determination on evidence can hardly be conceived. It would be an unwarranted refinement to say that this provision applies only to the *amount* of the land to be taken. The statute does not so state, and it is obvious that the taking of specific land sought when other land of the owner would answer as well, and its taking damage him less, may be as oppressive as the taking of more land than is necessary for the enterprise.

We believe that the correct construction of this statute is that those invested with the power of eminent domain have the right in the first instance to select the land which, according to their own views, is most expedient for the enterprise, and that it invests the court with the power to determine whether specific land proposed to be taken is necessary in view of the general location, and to finally determine the question of necessity for the taking of such specific land when there is evidence of bad faith, or oppression, or of an abuse of the power in the selection. Plainly, the selection by the condemnor is evidence of the highest character that the land selected is necessary for the enterprise, and in the absence of

clear and convincing evidence to the contrary, it conclusively established the necessity.    It is sufficient to make a strong *prima facie* case, but when convincing evidence is adduced by the owner that the land sought is not reasonably necessary, and that a slight change of location to other of his land will equally meet the necessity of the taker and be of much less damage to the owner, then it is incumbent upon the taker to rebut such evidence, since the refusal to make such change, if unexplained would amount to oppression and be an abuse of the power.    *In re Field*, 61 App. Div. 618, 70 N. Y. Supp. 677.

Our statute is essentially different from any other to which out attention has been called.    In nearly every other state the legislature has, either by general statute or by special charters, vested the absolute right to determine the question of necessity in the corporation itself.    The nearest approach to this statute is that of California, which provides that, "Before property can be taken it must appear: (1) That the use to which it is to be applied is a use authorized by law; (2) That the taking is necessary to such use; . . ." (Kerr's Cyclopedic Code of Civ. Proc., part 2, § 1241.)    The next section provides that "In all cases where land is required for public use the state or its agents in charge of such use may survey and locate the same; but it must be located in the manner which will be most compatible with the greatest public good and the least private injury."    Id. § 1242.    The determination of these questions is not by the California statute referred to the court as they are by that of this state.    The supreme court of California has held that, under this statute, the question of necessity is a question of fact to be submitted by the court to the jury, and, in effect, that the language above quoted from § 1242 is but declaratory of the meaning and application of the prior section as to necessity.    In *Santa Ana v. Gildmacher*, 133 Cal. 395, 65 Pac. 883, that court says:

"But section 1242, Code Civ. Proc., declares that when land is taken for public use the use 'must be located in the manner

which will be most compatible with the greatest public good and the least private injury.' The question of necessity in a given case involves a consideration of facts which relate to the public, and also to the private citizen whose property may be injured. The greatest good, on the one hand, and the least injury, on the other, are the questions to be determined, and these questions are for the jury, in passing on the question of necessity."

This court in *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670, has defined the word "necessity," as used in our statute, in practically the same way as the California court did in the above cited case. This court there held that in determining the necessity of property sought to be taken, the relative benefit and injury to the respective parties must be considered, using the following language:

"It is true that the petitioner cannot condemn this property in the absence of any necessity therefor. But the word 'necessity,' as used in the statute, 'does not mean an absolute and unconditional necessity, as determined by physical causes, but a reasonable necessity, under the circumstances of the particular case, dependent upon the practicability of another route [here another location], considered in connection with the relative cost to one, and probable injury to the other.' *Mobile & G. R. R. Co. v. Alabama M. R. Co.*, 87 Ala. 508, 6 South. 406."

In *Pasadena v. Stimson*, 91 Cal. 238, 27 Pac. 604, the supreme court of California, says:

"We think the court erred also in excluding the testimony of Gervaise Purcell. It would certainly have tended to prove that the route selected for the proposed sewer was not so good as one that might have been selected, and that it would cause a greater private injury. The offered testimony was to the effect that the witness had surveyed a route 1,432 feet shorter than that proposed, upon a better grade, through lands not thickly settled. We do not say that this testimony would have been conclusive, but it was competent and relevant to a material issue in the case, and should have been admitted, subject to the right of the plaintiff to introduce evidence in rebuttal."

The supreme court of New York, *In re Field, supra,* also held that in determining the question of necessity of a particular route for a road the court should consider the relative damage to the owner and the benefit to the taker. In that case the right of condemnation was refused where the highway as proposed would run through a garden, when the owner offered another equally feasible right of way free. The court found that the wrong to the owner would be out of all proportion to the result to be accomplished. In that case it appeared that, "The statute has imposed upon this court the duty of determining for itself whether the facts justify the sacrifice proposed." A statute of Wisconsin gave to any railroad the right, "to lay out its road not exceeding 100 feet in width, and to construct the same; and for the purpose of cuttings and embankments and of obtaining gravel or other material to take as much land as may be necessary for the proper construction, operation, and security of the road, . . . " (Rev. St. Wis., § 1828, subd. 4.) In *Wisconsin Cent. R. Co. v. Kneale,* 79 Wis. 89, 48 N. W. 248, the railroad company sought to condemn land for gravel. The court held that as to the right of way not exceeding 100 feet wide, the statute made the selection by the company final, but that as to any other land sought to be taken the question of necessity is a judicial question to be determined by the court. The opinion quotes the statute of procedure in such cases (§§ 1846, 1847), using the following language:

"The section then provides for giving parties interested notice of a hearing upon such petition, and authorizes any party interested in the lands to be taken to show cause against granting the prayer of the petition, and then provides *'that the court or judge shall hear the parties interested, and may adjourn from time to time, as shall be convenient; and shall determine whether the railroad corporation is entitled to take the whole or any part of the lands sought to be acquired, and, if no sufficient cause is shown against granting the prayer of the petition, shall make an order.'* etc. The part of the statute above italicized clearly confers upon the judge or

court judicial power to determine the right of the corporation to take the lands asked for, as well as the necessity for taking the same when asked to be taken for any other purpose than for its right of way,—not exceeding 100 feet in width. If, as the contention is on the part of the appellant company, the right to take the real estate desired and the necessity for taking it is to be determined by the company itself, it seems to us the legislature would have used different language from that found in the statute."

It will be noted that the Wisconsin statute, § 1828, grants to the railroad the absolute right to select a right of way not exceeding 100 feet and construct its road thereon. The word "necessary" is only applied to other lands sought. It will also be noted that the language quoted by the court from the statute of procedure is no more positive in making the question of necessity as to such other lands a judicial question than that of this state is as to any lands sought for any purpose.

This court has already determined, by practical application of our statute (Rem. & Bal. Code, § 925), that it makes the question of necessity of the particular land sought a judicial question. Rem. & Bal. Code, § 8736 (1 H. C. § 1571), giving to one railroad company the right to cross the tracks of another says:

"And if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manners of such crossings and connections, the same shall be ascertained and determined in the manner provided by law for the taking of lands and other property which shall be necessary for the construction of its road."

This section thus plainly refers the court for its power to determine the necessity as between the two roads to Rem. & Bal. Code, § 925 (1 H. C. § 651).

In *Seattle & M. R. Co. v. State*, 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217, the contention was made by the junior road, as by relator here, that in the absence of bad

faith in its selection, the court had no right to inquire into the necessity or place of crossing, but this court said:

"Now it is a provision of Code Proc., § 651, that if at the time and place appointed for the hearing of the petition the court or judge shall be satisfied by *competent proof* 'that the land, real estate, premises or other property so sought to be appropriated are required and necessary for the purposes of such enterprise,' he shall make an order for a jury.   The mere statement of the petitioner is not, under this law, to be taken as final, but the court must be *satisfied* by 'competent proof,' and upon that and that alone he is authorized to act further.   Nothing is said about cases where there may be a failure of such proof, but the plain implication follows that if the proof is not made the proceeding must fail.   And this proof must satisfy the court that the condemnation as proposed is 'required and necessary,' a mere showing of convenience or lessening of expense not being sufficient."

There is nothing in Rem. & Bal. Code, § 925 limiting its operation to cases where the railroad seeks to take the land of another railroad.   It is a general law relating to procedure in all cases of condemnation, while Rem. & Bal. Code, § 8736 is special in its nature, relating to the right of railroads to cross each other, and refers to the general law for procedure. While in such cases the selection by the junior company cannot, in the nature of the case, be accorded as strong probative force in determining the necessity as where land not claimed by the owner for public use is sought, the difference is not fundamental but is only a difference in degree.   In the opinion last cited, on page 169, this court also points out the difference between the statute of Illinois and that of this state. In reference to a citation of *Lake Shore & M. S. R. Co. v. Chicago & W. I. R. Co.*, 97 Ill. 506, the court said: "Moreover, the eminent domain act there under discussion did not contain any provision requiring the court to be satisfied of the necessity of the proposed taking."

The relator cites *State ex rel. Clark v. Superior Court*, 62 Wash. 612, 114 Pac. 444, recently decided by the court, as determining that, under Rem. & Bal. Code, § 925, the ob-

jection that the particular land selected by the condemning company is not reasonably necessary is never available to the owner. But in that case the company made a *prima facie* case of necessity by proving a survey and location of its proposed road, and no proof was offered in defense to show that the land so selected was not reasonably necessary, or that the taking would be oppressive, or that a slight change of route would equally meet the necessity and be less damaging to the owner. There is nothing to show that the proposed taking would be oppressive. The decision really rests upon the *prima facie* proof made by the selection. Under the evidence in that case the decision could not have been other than it was. While the language of the court is broader than was necessary to a decision, it must be construed in its application to the facts there presented. The peculiar wording of the statute was not mentioned in the briefs, which probably accounts for the unnecessary breadth of statement. The general rule there quoted from 2 Lewis on Eminent Domain (3d ed.), § 604, saves the very exception to the rule made by our statute. The quotation is as follows:

"It may be objected that there is no necessity of condemning the particular property, because some other location might be made or other property obtained by agreement. But this objection is unavailing. *Except as specially restricted by the legislature*, those invested with the power of eminent domain for a public purpose, can make their own location according to their own views of what is best or expedient, and this discretion cannot be controlled by the courts."

The words which we have italicized show that the eminent author based the rule announced upon statutes containing no such restriction as found in Rem. & Bal. Code, § 925, and an examination of the cases cited by him will so show. In the California case cited in support of the text, *Rialto Irr. Dist. v. Brandon*, 103 Cal. 384, 37 Pac. 484, the selection by the district was shown, and no opposing evidence was apparently offered. The statute of that state, which as we have seen is

somewhat similar to that of this state, is not referred to in the opinion.

Our construction of this statute gives no reasonable ground for the fear expressed further on in Lewis on Eminent Domain, § 604, that, "The result would be that the plaintiff could not condemn any land, for every other land owner would likewise have the same right to object to his land being condemned." The condemnor does not have to show an absolute necessity, but only a reasonable necessity. As we have said, the *prima facie* case made by evidence of the selection can only be overcome by clear and convincing proof that the taking of the specific land sought would be so unnecessary and unreasonable as to be oppressive and an abuse of the power. There is certainly no more reason to fear that the courts will lose sight of the necessities of any meritorious enterprises than that the condemning company if unrestrained might lose sight of the rights of the owner. It will hardly do to assume that the courts will abuse their powers and that condemnors will not. At any rate, the legislature has, in plain terms, vested the final determination in the court upon competent proof, and we have no power to hold otherwise.

Counsel for relator cite many cases from other states which seem to support their contention; but an examination convinces us that they all arose under statutes so different from that of this state as to render them inapposite. Relator complains that there is no evidence as to the cost of the removal of these poles. We think such evidence would be immaterial. The relator was admittedly a trespasser, and while it lost no right by reason of its trespass, neither did it gain any. The only consideration we can give to the trespass is to accord to it the same force as a formal selection of that route across respondents' land. The cost of removal of the poles has no bearing upon the question of original necessity for that particular route. It may be conceded that there is no evidence of bad faith in the original location on the part of the relator. There was, however, evidence that its selection was so un-

necessarily injurious to respondents as to amount to an abuse of the power.

In view of the evidence, we cannot say that the trial court exceeded the power vested in it by the statute. Judgment affirmed.

DUNBAR, C, J., PARKER, and CHADWICK, JJ., concur.

CROW, J. (dissenting)—A reasonable necessity for the land sought to be condemned for a conceded public use, has in my opinion been shown. I therefore dissent.