[No. 10258-7-II. Division Two. May 5, 1988.]

LAWRENCE S. WAGLE, *Respondent,* v. ROSINA ESTHER WILLIAMSON, *Appellant.*

Paul R. Roesch, Jr., for appellant.

Lindsey D. Cotterell and Quinn, Cotterell & Warning, for respondent.

PETRICH, J.—Rosina Williamson appeals the trial court's judgment that granted Lawrence Wagle an easement across her property. Williamson challenges the specific location of the easement, arguing that the court should have considered an alternate route over her property. We agree and reverse.

The facts of this case are not in dispute. The Wagle property, located in Cowlitz County, has no direct access to any public road. The terrain on the Wagle property is composed primarily of high rock cliffs and canyons, that limit access to any development of the northern section of the property. To the north of the Wagle tract is property owned by Williamson. To the west is a tract owned by Fugitt, which also does not have access to the county road. The nearest county road runs north and south along the western edge of the Williamson tract.

In 1964, Wagle purchased the 21–acre tract of land from Fred Dixon. Between 1964 and 1967, Wagle negotiated with Williamson for rights to the road known as the Whiskey Flats Route. The Whiskey Flats Route was considered the historic road from the county road to the Wagle property; it generally paralleled the southern border of the Williamson

property and also crossed over the Fugitt property before reaching Wagle's property. An agreement was apparently reached between the parties regarding this easement; however, nothing was formally executed and the matter essentially was dropped.

In 1980, Wagle intended to build a residence on his property. In order to make construction possible, Wagle negotiated with Williamson for access to the county road. The parties reached an agreement which granted Wagle an easement over the Whiskey Flats Route for 1 year starting August 1, 1980. However, both parties agree that they intended the easement to be for the Orchard Pass Route, which is a more direct northern route to the county road. The Orchard Pass Route essentially bisects the Williamson tract of land. In August 1981, the easement on the Orchard Pass Route terminated and subsequently Wagle did not travel over this route.

On February 19, 1985, Wagle petitioned the court for condemnation of the easement across the Williamson property along the Orchard Pass Route. At trial, Williamson objected to the selected route and offered, instead, the Whiskey Flats Route as an alternative. The trial court believing it had no authority to consider an alternate route, granted the easement to Wagle across the Orchard Pass Route.

RCW 8.24.010 provides for the condemnation of private ways of necessity over privately held lands. Unlike other forms of easements, the only requirement for a statutory easement is that the condemnor demonstrate a reasonable need for the easement to properly use and enjoy his property. RCW 8.24.010; *State ex rel. Schleif v. Superior Court,* 119 Wash. 372, 373–74, 205 P. 1046 (1922). Although Williamson has raised a variety of issues regarding the trial court's application of RCW 8.24.010, we consider the dispositive issue in this case to be whether the trial court improperly refused to consider the alternate Whiskey Flats Route when rendering its decision on the reasonable necessity of the easement.

In Washington, the general rule is that the condemnor has a right to select the route which, according to his own views, is reasonably necessary for the full enjoyment of his land. However, the court is vested with the power to determine whether specific land proposed to be taken is necessary, in view of the general location, together with the burdens and benefits to the respective properties and then finally to determine the question of necessity for taking such specific land when there is evidence of bad faith, oppression or an abuse of power in the selection. *State ex rel. Polson Logging Co. v. Superior Court*, 11 Wn.2d 545, 562, 119 P.2d 694 (1941); *State ex rel. Grays Harbor Logging Co. v. Superior Court*, 82 Wash. 503, 505–06, 144 P. 722 (1914), *error dismissed*, 243 U.S. 251 (1917). The trial court, believing it had no other choice in the absence of a showing of bad faith, refused to interfere with Wagle's choice of Orchard Pass Route. However, we hold that the trial court, as a function of its power to determine necessity in the first instance over the particular strip of property selected by Wagle, should have considered the evidence presented by Williamson regarding the negative impact to her of the Orchard Pass Route along with the feasibility of the Whiskey Flats Route. The mere absence of bad faith does not satisfy the requirements that the selected route is reasonably necessary for the use and enjoyment of the condemnor's landlocked property.

In the case of *State ex rel. Postal Telegraph–Cable Co. v. Superior Court*, 64 Wash. 189, 116 P. 855 (1911), the Supreme Court was faced with a factual problem similar to the case at bar. In *Postal Telegraph–Cable*, the condemnor petitioned for an easement across the property of another for the purpose of stringing telegraph wire. The property was high grade agricultural land, on which the condemnee had plans to establish an orchard. In order to accommodate the condemnor, the landowner offered an easement that paralleled the railroad easement that traveled along the perimeter of the property. However, the condemnor

declined this offer and attempted to establish an easement that effectively bisected the property.

In denying the telegraph company's petition, the Supreme Court discussed the trial court's responsibility to consider the negative implications of the selected route.

> Plainly, the selection by the condemnor is evidence of the highest character that the land selected is necessary for the enterprise, and in the absence of clear and convincing evidence to the contrary, it conclusively established the necessity. It is sufficient to make a strong *prima facie* case, but when convincing evidence is adduced by the owner that the land sought is not reasonably necessary, and that a slight change of location to other of his land will equally meet the necessity of the taker and be of much less damage to the owner, then it is incumbent upon the taker to rebut such evidence, since the refusal to make such change, if unexplained would amount to oppression and be an abuse of the power. *In re Field,* 61 App. Div. 618, 70 N. Y. Supp. 677.

*Postal Telegraph–Cable,* 64 Wash. at 194–95. The *Postal Telegraph–Cable* court went on to conclude that, although there was no evidence of bad faith in the original location on the part of the condemnor, there was evidence that such route was so injurious to the landowner as to amount to an abuse of power. *Postal Telegraph–Cable,* 64 Wash. at 201–02. On those grounds, the Supreme Court affirmed the trial court's denial of the petition for easement.

The present case is not unlike *Postal Telegraph–Cable.* Williamson planned to establish a tree farm on the undeveloped property. As in *Postal Telegraph–Cable,* there were two available easements, one perimeter easement, and one easement that bisected the property. At trial, Williamson attempted to establish that the Orchard Pass Route would have an adverse impact on her tree farming business as well as result in an overall diminution in property value due to the division of the property. It is this type of evidence that rebuts the prima facie case of necessity. Therefore, the trial court should have considered this evidence in

determining whether a change in location would equally meet the necessity and do less damage to Williamson.

In support of the trial court's decision, Wagle cites two cases where the court refused to consider alternate routes. In both *State ex rel. Polson Logging Co. v. Superior Court, supra,* and *State ex rel. Grays Harbor Logging Co. v. Superior Court, supra,* the courts refused to consider evidence that other routes were feasible, absent evidence of bad faith, oppression or abuse of power. However, in each case, the landowner relied upon the fact that there were feasible alternate routes rather than presenting evidence of any potential adverse effects on his own property. For example, the court in *Grays Harbor* stated that

> [t]he evidence offered does not go to the extent of showing that the route selected by the condemnor causes unnecessary damage to the relators' property, and that the route over Sec. 31 [the alternate route] would cause much less damage to that property than would the route selected cause to the relators' property.

*Grays Harbor,* 82 Wash. at 507. Furthermore, the court in *Polson Logging* also considered the feasibility of the alternate routes in making its determination. In the present case, there was some evidence that the choice of the Orchard Pass Route would adversely affect Williamson's property. Such evidence went beyond the mere showing of a feasible alternate route. Therefore, the court should consider the relative feasibility of the two routes, the cost of construction and maintenance, and the burdens imposed in the selection of the route. Without considering the relative merits of each route, the trial court's enforcement of the condemnor's selection would amount to oppression and would be an abuse of power.

We reverse the judgment and remand to allow the trial court, in accordance with the views expressed herein, to consider additional evidence as may be appropriate and, after considering the costs, benefits and detriments of both the Orchard Pass Route and the Whiskey Flats Route, then

to determine whether the route selected by Wagle is reasonably necessary for the use and enjoyment of his property.

REED, C.J., and ALEXANDER, J., concur.