[No. 15944. Department One.   July 28, 1920.]

THE STATE OF WASHINGTON, on the Relation of
Donald Urquhart et al., Plaintiff, v. THE
SUPERIOR COURT FOR GRANT COUNTY,
Joseph Sessions, Judge,
Respondent.[1]

EMINENT. DOMAIN (14, 39)—STATE HIGHWAYS—NECESSITY OF AP-
PROPRIATION—EVIDENCE—SUFFICIENCY. The evidence shows a reason-
able necessity for a proposed state highway through farming lands
of the relators, where it appears that the use of the present county
roadway through a small town would entail the expenditure of large
sums in the building of a viaduct and bridges, that the proposed route
is a half mile shorter and eliminates excessive grades, curves and
two railroad crossings at grade, and that the Federal government
refused to aid in the enterprise should adverse plans proposed by the
county be adopted.

SAME (14, 39)—LOCATION OF ROUTE—NECESSITY—APPROPRIATION
ACT—STATUTES. The act of 1919, ch. 92, p. 223, appropriating funds
for the construction of that part of the North Central Highway be-
tween Harrington and Wilson Creek, does not preclude use of the
funds in the construction of the highway along a proposed route that
does not run through the town of Wilson Creek; since the locating
act, Laws of 1919, ch. 110, p. 268, omitted any mention of Wilson
Creek and merely provided for the most feasible route between
Ephrata and Krupp, and the evidence showed no feasible route to
which the appropriation relates that will reach nearer the corporate
limits of Wilson Creek than the route selected.

SAME (104)—PROCEEDINGS—CONDITIONS PRECEDENT—LOCATION OF
ROAD—STATUTES. Rem. Code, § 5870, providing that no appropriation
for the construction of a state road shall be expended thereon until
the state highway board shall have declared the road feasible and
approved maps, plans and specifications submitted by the highway
commissioner after survey of the entire length of such highway and
the making of outline and profile maps, must be held to be modified
by the act of 1919, ch. 92, p. 223, making appropriation for the pur-
pose of meeting the cost of constructing only specified parts of the
state's highways.

[1]Reported in 191 Pac. 416.

Certiorari to review orders of the superior court for Grant county, Sessions, J., entered June 1, 1920, adjudging a public use and necessity in condemnation proceedings, after a hearing before the court. Affirmed.

*E. J. Cannon, T. B. Southard,* and *C. G. Jeffers,* for relators.

*The Attorney General* and *Jno. A. Homer, Assistant,* for respondent.

MITCHELL, J.—This action and that of the State v. Louis. C. Williams *et al.,* and another, the State v. P. C. Lorentzen *et al.,* were instituted in the superior court of Grant county, for the purpose of condemning property through farm lands upon which to construct a portion of the North Central Highway. A hearing was had upon all the petitions, under stipulation of consolidation, resulting in an order in each case granting the petition therein and adjudicating public use and necessity as prayed for. Thereafter, upon application, this court issued its writ of certiorari, pursuant to which the proceedings leading up to and resulting in the entry of the orders complained of are here for review, and for which purpose the three cases have again been consolidated by agreement of counsel.

The legislature (Laws of 1919, ch. 110, p. 268), declared:

"Sec. 1½. That section 15 of chapter 164 of the Laws of 1915 be amended to read as follows:

"Section 15. A primary state highway is established as follows: A highway starting from a connection with the Sunset Highway at Ellensburg; thence by the most feasible route (heretofore the Sunset Highway) to the Columbia River near Vantage; crossing the same and continuing thence northeasterly by the most feasible route (heretofore the Sunset Highway)

to Quincy; thence by the most feasible route (heretofore the North Central Highway) through Ephrata, Krupp, Odessa, and Harrington to a junction with the Sunset Highway at Davenport, to be known as the North Central Highway.''

The present county road running easterly from Ephrata reaches a point some 360 feet from the southwest corner of the corporate limits and about 1,400 feet from the business section of the town of Wilson Creek, thence it makes a northerly turn, crosses the Great Northern Railway tracks, and still further north enters Main street in the town of Wilson Creek, and follows that street easterly through the town, thence on to a point about one mile east of the town, thence runs to the south, again crosses the Great Northern Railway tracks, and runs about one-half mile further south to what is spoken of as the Lorentzen corner. Here the county road makes a right-angle turn to the left, and continues in an easterly direction about six miles to the town of Krupp. There is a stream, Crab creek, which flows from the east to Wilson Creek. Within several miles of the town on the east, the creek penetrates a large swampy section, and then runs on in low land through the city and to the south of Main street and the business and residence portion of the city and on the north side of the railway tracks. The swampy area is drained by a large ditch which runs on through the town. The ditch is ample to carry the water except during high water season, when the swamp is covered with water. There is a stream called Wilson creek which runs from the north through the easterly part of the town and empties into Crab creek. Immediately south of and within a few hundred feet of the town, a bench or hill rises precipitously from the low lands. It commences to rise from

the west near the point at which the county road turns
northerly to pass over the railway tracks into the
city.  After reaching the top of the hill, the surface is
nearly level for some distance, and then slopes down-
ward to the east.  At a point where the present road
turns northerly to cross the railroad into the city from
the west, about 360 feet from the corporate limits, the
proposed state highway leaves the county road and
runs southeasterly and easterly, passes over the bench
or hill, and thence down to the Lorentzen corner, where
it connects with the present county road.  From the
west it runs across the lands of Mr. Urquhart, Mr.
Williams, Mrs. Mitchell and Mr. Lorentzen.  The terri-
tory through which it passes is used for farming,
cattle and sheep raising and grazing purposes and,
except portions of the Mitchell and Lorentzen places,
it is sage brush land.  The proposed route is shown to
be a good one and is a half mile shorter than the way
through the city.  The state has already obtained the
deed for a right of way across Mrs. Mitchell's place.
Wilson Creek has a population of four hundred to
five hundred.  The proposed way was selected by the
state highway commissioner, and the plans and speci-
fications for construction of the highway were pre-
pared by him and, together with the route, were ap-
proved by the state highway board, which directed the
institution of these condemnation suits.

Relator contends:   (1) That the evidence fails to
sustain the court's order of necessity for the follow-
ing reasons:   (a) That the lands sought to be con-
demned are not necessary, nor is any part of them
necessary, for the construction of the highway named;
(b) that public enterprise does not require the high-
way on the location described; (c) that to construct

such highway at such location is an abuse of power; (d) that to take such property is oppressive. (2) That the state highway board lacks any power to condemn the property, because the legislature has established the road through the town of Wilson Creek and directed that its appropriations sought herein to be expended be expended only between Harrington and Wilson Creek.

Calling attention to the provisions of section 925, Rem. Code, that, in granting an order of necessity, the court shall be further satisfied "that the public interest requires the prosecution of such enterprise, . . . and that the land, real estate, premises or other property sought to be appropriated are required and necessary for the purpose of such enterprise," relators quote from the case of *State ex rel. Postal Tel-Cable Co. v. Superior Court,* 64 Wash. 189, 116 Pac. 855, as follows:

"We believe that the correct construction of this statute is that those invested with the power- of eminent domain have the right in the first instance to select the land which, according to their own views, is most expedient for the enterprise, and that it invests the court with the power to determine whether specific land proposed to be taken is necessary in view of the general location, and to finally determine the question of necessity for the taking of such specific land when there is evidence of bad faith, or oppression, or of an abuse of the power in the selection."

The quotation should be continued, for immediately it was said:

"Plainly, the selection by the condemnor is evidence of the highest character that the land selected is necessary for the enterprise, and in the absence of clear and convincing evidence to the contrary, it conclusively established the necessity."

However, the court further said in that connection:

"It is sufficient to make a strong *prima facie* case, but when convincing evidence is adduced by the owner that the land sought is not reasonably necessary, and that a slight change of location to other of his land will equally meet the necessity of the taker and be of much less damage to the owner, then it is incumbent upon the taker to rebut such evidence, since the refusal to make such change, if unexplained, would amount to oppression and be an abuse of the power."

While there is no claim or offer that other land of the relators may be taken, it is contended the principle is involved for the reason that the county road through the town or city of Wilson Creek will meet the necessity, thus doing away with the need of taking any private property, and that therefore the plan proposed by the state manifests bad faith, oppression and abuse of power.

Much of the proof of relators was in support of a route heretofore surveyed for a county road from Wilson Creek easterly to Krupp, considerably north of the present county road between those points; but, as we understand, relators practically abandon that plan (at least we think it indefensible) and rely upon the present county roadway as a substitute for the state's proposed route to justify their claim of bad faith and oppression at the hands of the state authorities.

It is shown there is a county road from Hartline south to Wilson Creek; that most of the settlers around Wilson Creek live to the north and west of the town. It is admitted the present crossing of the railway tracks and waterway near the southwest corner of the town is undesirable and dangerous, so that the county and city authorities and the Great Northern Railway Company are already interested in a proceeding before the public service commission looking to

the building at that point of an overhead crossing, largely of wooden material, which has been estimated to cost $22,000, and that the roadway along Main street in the town would have to be slightly raised and strengthened to put it beyond the possibility of harm from exceedingly rare high water. Relators' evidence shows the improvement of the bridge over the stream named Wilson creek and a substantial culvert east of town for carrying the waters of Crab creek would be comparatively inexpensive. They estimate the total cost of all such improvements would be approximately $30,000, which is $16,000 less than the estimated cost of construction of the highway as proposed through relators' property. It is shown also by relators that a portion of the through travel east on the Sunset highway detours at Hartline by way of Wilson Creek, and it is plausibly argued that, to accommodate that travel, the settlers living north of Wilson Creek and the residents of the city itself, as well as the public generally, in reaching the highway as proposed by the state, or going from it to those localities, will still require the building and maintenance of the overhead crossing and other improvements along the county road, and that to build and maintain, in addition thereto, the highway as now proposed would be unwarranted as a matter of public expense and oppressive upon relators in the taking of their property.

On the contrary, the state, by way of explanation and meeting the charge of bad faith made upon it, shows by its proof that its route is the only feasible and practicable route; that it has a maximum grade of only five per cent and is free from curves of any consequence; that it is about one-half mile shorter to the Lorentzen corner than the road through the city; and that the soil is well adapted for road building.

It is shown to be the policy of the state highway authorities in constructing such roads to avoid railway crossings at grade and that its proposed plan avoids two such crossings—one on each side of the town. It was also proven that, according to the material used and construction adopted by the state in building state highways, a viaduct over the railway and stream at the west of the town would cost $120,000, a bridge over the stream called Wilson creek, $8,000, about $8,000 for a crossing over Crab creek ditch, and still there would be left a railroad grade crossing to the east if the county road route were adopted. The evidence shows that a viaduct along the county road to cross over the swampy land and railroad to the east of the city would cost approximately $150,000.

An appropriation of over one million dollars by the Federal government is available for assisting this state in the building of its permanent highways, provided the plans and specifications, etc., meet with the approval of its engineers. In this particular case the state highway commissioner, upon learning of the plan of overhead crossing proposed by the county and railway company at a cost of $22,000, submitted the same to the engineers of the national government and was advised no Federal aid would be supplied if it or anything other than that kind of construction which, according to the testimony in this case, is being generally used by the state in such work were adopted. While it is true the Federal appropriation is still available if none of it is used on this project near Wilson Creek, yet it is also true that the state has by necessity arranged its plans so as to use a part of the Federal appropriation at this point where three and one-third miles are under contract to be built at a cost of $46,000. The incident of the rejection by the United States en-

gineers of the plans proposed and considered by the county and railway company for going through the town is of importance as a testimonial in favor of the judgment of the state authorities, when we come to consider the charge of bad faith made against them by the relators. In this case it was testified to by the state's witnesses that, in locating primary or permanent state highways, consideration was always taken of local interests, provided they did not result in making the highway dangerous or cause an unwarranted demand upon the appropriation. In 1913, the legislature, in § 2 of an act (Laws of 1913, ch. 30, p. 75; Rem. Code, § 8733-2), relating to road and highway crossings, provided:

"All highways and extensions of highways hereafter laid out and constructed shall cross existing railroads by passing either over or under the same, when practicable, etc."

This is the policy the testimony shows the state highway authorities are observing generally and are seeking to apply in the present case. In the recent case of *State v. Superior Court, Adams County,* 111 Wash. 542, 191 Pac. 413, in discussing the matter of condemning rights of way for a primary state highway, this court said:

"The advent of the automobile and the auto-truck, and the consequent extensive and ever-growing use to which roads are put makes it necessary that main thoroughfares be built upon the best route obtainable."

It is the contention of the state that the present road through the town of Wilson Creek presents many difficult engineering problems the solution of which would run into figures that make the construction of the North Central Highway over that route absolutely pro-

hibited; and certain it is that the present appropriation is wholly inadequate for any such plan.

The duty and power of locating these primary state highways is reposed by the statute upon the state highway authorities, subject, of course, to the right of appeal to the courts in case of bad faith or an abuse of that power. In this case the record satisfies us there has been no abuse of that power, and that there is a reasonable necessity for acquiring the right of way through relators' property.

Secondly, it is claimed that the state lacks power to condemn relators' property because the legislature has established the route through the town of Wilson Creek. This contention is made because of the provisions of ch. 92, p. 223, Laws of 1919, which is the public highway appropriations act, and which reads:

"For engineering, construction and improvement, and paving of the primary and secondary highways of the state hereinafter enumerated, there is hereby appropriated out of the Public Highway Fund and the Motor Vehicle Fund, the respective sums as follows: . . . Sunset Highway . . . between Harrington and Wilson Creek (North Central Highway), Public Highway Fund $50,000, Motor Vehicle Fund $50,000."

In effect, it is argued that it definitely locates this highway through Wilson Creek, and further, that the proposed route is not "between" Wilson Creek and Harrington, and consequently, as this fund could not be used for constructing the highway as proposed by the state, there is no necessity for acquiring relators' lands. What may be termed the locating act, ch. 110, p. 268, Laws of 1919, hereinbefore quoted from, in establishing the North Central Highway, omits any mention of Wilson Creek, which is situated between the towns of Ephrata and Krupp, and which two towns are named in the act; it simply provides for the most

feasible route. An examination of the statutes of this state discloses there have been established or created a large number of state highways in the last several years, and that it has been the policy of the legislature to make appropriations from time to time to meet the expenses of engineering, construction, improvement, etc., of specified portions of the different highways. The terms of such act, in this respect, are intended to designate or identify the particular link or stretch of the whole highway to which a given appropriation shall apply. In this case we are satisfied there has been a proper application of that item in the appropriation act of 1919, in undertaking to use it for a route through relators' lands, since the evidence shows there is no feasible route for the stretch of highway to which the appropriation act relates that will reach nearer the corporate limits of the town of Wilson Creek than the route adopted.

Further, without its being specifically enumerated in the assignment of errors, it is contended the appropriation in this case cannot be used, and hence there can be no taking of relators' property, because the evidence shows that the provisions of § 5870, Rem. Code, have not been complied with. That section reads:

"Whenever any money is appropriated for the construction of a state road, the state highway commissioner shall, unless such road has been theretofore surveyed, cause survey to be made of the entire length of such highway, and cause the same to be mapped both in outline and profile, and shall also cause plans and specifications for the construction of such highway to be prepared. Such maps, plans and specifications shall be thereupon submitted to the state highway board, and no portion of any appropriation shall be expended upon such road until the state highway board shall have declared such road feasible and shall

have approved said outline and profile maps and said plans and specifications.''

That law was passed in 1907 (Laws of 1907, p. 295, § 4), before it became the practice of the legislature to define primary highways from one end to the other, and must be held to be modified by the act of 1919 in making an appropriation for the declared purpose of meeting the cost of engineering, construction, etc., of only specified portions of the state's highways.

The orders complained of are affirmed.

HOLCOMB, C. J., MAIN, PARKER, and MACKINTOSH, JJ., concur.