[No. 18305. Department One. January 10, 1924.]

THE STATE OF WASHINGTON, *Plaintiff*, v. THE SUPERIOR COURT FOR YAKIMA COUNTY, *V. O. Nichoson, Judge, Respondent*.[1]

EMINENT DOMAIN (39, 40)—STATE ROADS—NECESSITY FOR CONDEMNATION—SELECTION OF ROUTE. No public necessity is shown for the condemnation for a highway of warehouse property, used by and necessary to the community, where a change of the road involving a curve of only two degrees and the addition of 2 and 3/5ths feet in length is practicable and can be accomplished without difficulty and at saving in expense.

SAME (39, 40, 46)—NECESSITY—SELECTION OF ROUTE—ARBITRARY CONDUCT—DETERMINATION BY COURT. Under Rem. Comp. Stat., § 6766, providing that the selection of the lands to be condemned, made by the supervisor of highways, shall be conclusive upon the court in the absence of bad faith, arbitrary or capricious action, the court is not precluded from determining the question of public necessity; and a selection may be held arbitrary and capricious where it inflicts unnecessary injury and damages out of proportion to the public benefit, which can be obviated by a slight change increasing the utility of the highway and the surrounding property.

Certiorari to review a judgment of the superior court for Yakima county, Nichoson, J., entered October 16, 1923, denying an order of public use and necessity in

[1] Reported in 222 Pac. 208.

condemnation proceedings, after a hearing before the court. Affirmed.

*The Attorney General* and *Tom W. Holman, Assistant,* for relator.

*Rigg & Venables* and *Nat U. Brown,* for respondent.

MACKINTOSH, J.—Lloyd Garretson Company owns a warehouse in one of the fertile and developing fruit districts of the Yakima valley. Its warehouse is approximately 141 feet in length by 109 feet in width, and is used for dry and cold storage. The Garretson company also conducts a mercantile business for the accommodation of the fruit growers in that vicinity, supplying them especially with the things necessary to fruit growing. The basement of the warehouse is the portion used for cold storage and is reached through a doorway on the northeast corner of the building. The warehouse is served by a spur extending from the Cowiche branch of the Northern Pacific Railway, which passes to the southeast of the building. At the present time a county road passes on the westerly side of the building and it is the purpose of the state highway department to convert this county road into a state highway, known as state highway number 5, which necessitates the widening, straightening and permanent improvement of the road, and in this suit the highway department is attempting to condemn a right of way 60 feet in width, passing northeasterly of the warehouse and in close proximity thereto. This selection eliminates curvature and runs the road on a tangent past the warehouse. The state, being unable to secure a right of way through the Garretson property, resorted to condemnation. Upon the hearing on the question of public use and necessity, the trial court denied the application for an order of public use and necessity,

and the matter is now before us on a writ of certiorari to review the court's action in this regard.

The evidence shows that, as already stated, the proposed highway would be straight, and from an engineering standpoint is not to be criticized. The evidence, however, shows that a road constructed on that location would so seriously interfere with the operation of the warehouse as to render it largely impracticable to continue the cold storage feature, and also would seriously impair the usefulness of the warehouse in its other particulars. It appears that, on account of the peculiar contour of the country at this place, the location of the warehouse cannot be changed, and that, if an entrance could be effected into the cold storage plant, its use would make hazardous the travel on the highway, for the reason that the trucks would have to come up an abrupt grade straight across the roadway and interfere with traffic. It also appears that it is not only convenient for the people of the community surrounding this warehouse to have dry and cold storage but it is nearly imperative, and that the location selected for this purpose is especially convenient. These are matters, of course, not sufficient to prevent the state from constructing a highway; but if it appears that, with very little change in the state's plan, these objections may be removed, an inquiry should be engaged in as to the feasibility of such changes.

An alternative plan is proposed by the Garretson company which will remove the highway to a distance of forty feet from the warehouse doorway referred to, which would allow the use of the warehouse to its full potentiality and interfere in no way with the loading and unloading of fruit and merchandise, and would thus allow the warehouse to continue to serve the community. This change also would lessen to a small extent,

for the traffic on the new highway, some of the dangers attendant upon crossing the branch line of the Northern Pacific at grade near the warehouse, as by removing the road further from the warehouse a less obstructed view could be obtained by the drivers of approaching vehicles. This change in the road adds no appreciable curvature, the amount of curve under the proposed plan being less than two degrees, and it cannot on that account be seriously objected to by the highway department, one of whose principal considerations in the laying out of roads is the elimination of curves. The proposed change adds but 2 and 3/5ths feet to the length of the road and, of course, this is not of any importance. The change does, however, necessitate the straightening out of an irrigation ditch lying to the east of the roadway, to accomplish which it would be necessary to procure a right of way for the ditch from the Northern Pacific Railway and to secure the consent of the ditch company.

There is a good deal in the record showing that these matters may be accomplished without difficulty, and the Garretson company offers to procure the right of way from the Northern Pacific and the consent of the ditch company. It also offered to donate the right of way for the highway through its own property.

Altogether it would seem that, under the highway proposed by the Garretson company, the expense to the state would not be as great as that entailed by construction under its plan. The matter of cost only enters into this hearing on use and necessity in determining whether the location is properly made, and the question of the amount of damage to the property owner appears at that time for the same purpose only, the law contemplating that, when the question of damages is submitted to the jury, the property owner will receive full compensation.

The record shows that the highway, as proposed by the state, was located by a district engineer, and that in his location he paid little or no attention to any factor other than the securing of the straight highway; that he was not interested to any extent in what the result of the location might be upon the surrounding property, and that his recommendations received the approval of the superior officials of the department without their special attention being called by anyone to the result that would occur to the warehouse and its patrons. The testimony produced by the Garretson company that the present entrance to the cold storage space is the only available one was not met by any evidence of the state to the contrary, and must therefore be taken as portraying the actual situation. So much for the facts.

The legislature by Laws of 1921, ch. 32, p. 116 (§ 6766, Rem. Comp. Stat.) [P. C. § 6786], has established the law relative to this situation, where this appears:

".  .  . and in such action the selection of the lands by the supervisor of highways shall, in the absence of bad faith, arbitrary, capricious or fraudulent action, be conclusive upon the court and judge before which the action is brought that said lands are necessary for the purpose sought."

Prior to the passage of this act, this court had in effect said as much in *State v. Superior Court,* 111 Wash. 542, 191 Pac. 413, and *State ex rel. Urquhart v. Superior Court,* 112 Wash. 34, 191 Pac. 416, and, after the passage of the act, in *State ex rel. Hanson v. Superior Court,* 117 Wash. 399, 201 Pac. 1, affirmed the law, and there is nothing in the statute or decisions from which the court at this time has any inclination to depart.

Nor is there anything in the record of this case to show any actual bad faith, arbitrary, capricious or fraudulent conduct. But the question remains whether, under the circumstances, the selection of such a highway route is not in law arbitrary. The plaintiff seeks to have us lay down the rule that the arbitrary, fraudulent, capricious action or bad faith must enter into the determination of the route, urging that:

"If the selection is free from any such charge, we submit that it is for all times thereafter a performed duty and not subject to being nullified for any refusal, arbitrary or otherwise, to consider reasons at any time thereafter proposed for any change of location offered either to the highway engineer or the highway committee. . . . We submit that it cannot possibly be the intent of the law that a fair, honest and full consideration, free from any taint of arbitrary, fraudulent, capricious action or bad faith, resulting in the selection of a course of highway can be so nullified because of any action subsequent to the selection. . . . There is absolutely no arbitrary, capricious or fraudulent action or no bad faith shown or even attempted by the respondent to be shown in advance of the selection and adoption of the route in question through the respondent's lands."

With this contention, however, we cannot agree, for if it should appear at any time in proper proceedings that there is no legal necessity for constructing the highway as proposed by the department, the court has a right to deny the order of purported use and necessity; and where a selection has been made which inflicts injuries and damages out of proportion to the public benefit, when the selection of another route is possible which does not in any material degree alter the state's plan and which will obviate the damage and increase the utility, not only of the highway, but of the property surrounding it, to the public, the court has a right to inquire into those matters and say that a fail-

ure to take them into consideration by the highway department amounts to constructively arbitrary conduct. This rule is recognized in *State ex rel. Postal Telegraph-Cable Co. v. Superior Court,* 64 Wash. 189, 116 Pac. 855, and has not been changed by the decisions or the statutes to which we have called attention. It is also recognized in the case of *State v. Superior Court, supra.* The failure to consider all of the elements of damage shown by the testimony in this case in making the selection is in law arbitrary conduct. The trial court, at the conclusion of the hearing, a part of which was conducted at the property, with exceptional clarity expressed the correct view of the law and the facts of this case, and we can do no better than quote his oral statement:

"I do not agree with the state's attorney's interpretation of the law in this case. I think by the term 'capricious and arbitrary action' it does not mean that the State Highway Board must have been, previous to the hearing on the order of necessity, confronted with reasons for altering the course of the highway and turned them down arbitrarily.

"I think the proper interpretation of the term, and the interpretation which the court should place on it, is to view the whole situation as disclosed by the evidence at the hearing on the order of necessity, and then determine whether or not the refusal of the state to attempt to select a line which is a very small variation from that proposed by the state, whether that refusal amounts to fraud, or caprice or arbitrary action.

"I think it has been shown, beyond dispute, and I think both sides will admit, that the highway as outlined now on the state course is one proposed by the state that will increase the railroad hazard over that in the proposed change offered by Garretson. I think that unquestionably proven beyond a doubt, and it is clear to my mind that the removal of the center line of the highway approximately forty feet from the warehouse will to quite an extent lessen the hazard of the

railroad crossing. That is something that affects for all time the community and the state and the usefulness of the highway; and it has not been disproven, but is a fact that exists, and I think it is an element that the State Highway Board should consider in laying out the road.

"The second ground I consider is this: That while it is argued that this is a strictly private enterprise . . . and the argument is advanced that they can be compensated in money, still the physical facts are that no underground system of roadway for handling produce to and from the warehouse is feasible under the road plan outlined by the state, and the operation of the plant over a continuous number of years calls for a conveyor in their basement. It is very hard to determine what the actual damage would be, but if another road can be placed forty feet away that can allow the use of that. . . . It is a strictly private use, I realize, but nevertheless it is a thing that the State Highway Department should take into consideration; and, coupled with other facts, I think it makes the determination of this case possible.

"The third point I have in mind is the great amount of depreciation to private property to allow the road to remain at its present proposed location. I will grant —I think it unquestionably true—that the present location, from an engineering standpoint strictly, is the proper thing. But we are here to determine whether or not there was a reasonable necessity for leaving the highway at its present location. The 111 Washington case refers to unusual amount of damage to property and I think the showing here comes strictly within that ruling.

"Another element is, I think, the Garretson warehouse site has been shown to be, without contradiction, the only site available for a plant for cold storage of fruit for that particular locality, which is a very large orchard district. It affects a large number of growers, the public are involved, and it has more than a private aspect. . . . Mr. Allen testified that two of the outstanding objections are, it requires a new right of way and also interferes with the ditch. Those are matters

which can be procured, and it seems to me when you take into consideration particularly the increased hazard in the present location of the railroad crossing, those objections are certainly overcome. It seems to me that if the court is not allowed to pass judgment when these matters arise, it is merely giving to the State Highway Commission the authority to make a selection which, if it is bound to be final, nullifies the state law. . . . I think the action taken by the state board is therefore constructively arbitrary and capricious. . . ."

The action of the trial court will be affirmed, but upon this condition, however; that the Garretson company put in the record a firm obligation to secure the right of way necessary for the change in the irrigation canal and the consent of the irrigation company to the change being made, and confirm its offer to donate the right of way through its own property according to its present suggestion. Upon these things being done, the judgment of the trial court will be made final.

MAIN, C. J., TOLMAN, HOLCOMB, and MITCHELL, JJ., concur.