# Fayette County Commissioners' Petition.

*Municipalities—Counties—Condemnation of land—Court house
—Grand jury—County commissioners—Acts of June 1, 1883, P. L.
58; June 19, 1911, P. L. 1039, and April 21, 1921, P. L. 271.*

1. The report of a grand jury recommending the acquisition of
land for a county building need not set forth the exact language
of the Act of April 21, 1921, P. L. 271, "that the necessities of
the county require ground at the county seat for the purpose of
the [proposed building to be] erected."

2. It is sufficient if the report recites facts equivalent in sub-
stance and meaning to the expression employed in the statute.

3. The initiative in a proceeding to purchase or condemn land
for a county building does not rest with the county commissioners,
but the first step must be taken by the grand jury, followed by
the approval of the court.

4. The report of the first grand jury need not be immediately
acted on; nor is it necessary that the various steps required by
the statute be more than reasonably continuous.

5. An order approving the findings of the two grand juries made
in less than one year after the report of the second grand jury
was filed, held in time, in view of the attending circumstances.

6. The fact that the order was marked nunc pro tunc as of the
dates of the filing of the grand jury returns is immaterial. Such
reference back will be treated as surplusage.

7. After viewers have been appointed, following proper pro-
ceedings by the grand jury, the court and the county commis-
sioners, a property owner whose land has been condemned cannot
ask that the appointment of viewers be vacated on the ground
that ample other property had been secured.

8. In such case the power of eminent domain is not limited to
present necessities; provision may also be made for apparent
future needs.

Argued March 14, 1927. Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

Appeal, No. 65, March T., 1927, by George Patterson,
petitioner, from order of C. P. Fayette Co., Sept. T.,
1926, No. 828, dismissing petition to set aside proceed-
ings and appointment of viewers in matter of Fayette

County Commissioners' Petition for appointment of viewers. Affirmed.

Petition to set aside proceedings.   Before HUDSON, P. J., HENDERSON and MORROW, JJ.

Petition dismissed.   George Patterson, petitioner, appealed.

*Error assigned* was, inter alia, order, quoting record.

*H. S. Dumbauld,* for appellant.—The court was without jurisdiction to appoint viewers.

The case of Bennett v. Norton, 171 Pa. 221, is authority for the contention that the grand jury must report the necessities of the county in substantially the language of the statute.

The reports of the grand juries, had they been sufficient, were not legally approved by the court.

The decisions limiting and defining the powers of the court over judgments rendered during a particular term, after the ending of such term, may not be controlling; they are, however, very persuasive: Lance v. Bonnell, 105 Pa. 46; Com. v. Grow, 48 Pa. Superior Ct. 373; Com. v. Baker, 212 Pa. 230.

Taxpayers and property holders who had the right to assume that the proceedings had been abandoned were not given a day in court.

*Jos. J. Baer,* for appellee.—The court had jurisdiction to appoint viewers.

Their reports were sufficient.

The act fixes no time within which reports are to be approved; if the statute fixed a time within which the court must approve, then the court cannot enlarge that time: Harris v. Mercur, 202 Pa. 313; Northampton Co. Comrs. App., 57 Pa. 452.

OPINION BY MR. JUSTICE SADLER, March 21, 1927:

Fayette County has a population of over 200,000, and an assessed valuation in excess of $110,000,000. When the present courthouse was constructed about 1890 there were but two judges, now there are four. The building provided for county purposes has been for some time inadequate, as well as in need of repair. For two years prior to September, 1925, the President Judge frequently called the attention of the assembled grand juries to the need of expansion so that the public affairs might be conducted in a proper and more expeditious manner. At the time mentioned Judge VAN SWEAR-INGEN specially charged the members of the then sitting body, suggesting the necessity of a remodeled or enlarged structure, and referred to the lack of proper accommodations in the existing building, pointing out in detail many of the improvements required, so that the public work could be properly performed. In a supplemental charge at the same term it was suggested the commissioners be authorized "to acquire by purchase or condemnation additional land adjacent to the present site" and erect thereon a building which would provide the necessary facilities.

The grand jury made a report, setting forth that, after a complete examination, it found the rooms and offices in the courthouse "so crowded and congested as to be wholly inadequate for the public business they were designed to accommodate," and gave many reasons which made necessary an addition to meet the present needs, not necessary to be repeated here. It recommended that the existing structure "be preserved substantially in its present form and utilized for the purposes for which it may be available, and that the county commissioners, with the approval of the court of quarter sessions, acquire by purchase or condemnation additional land adjacent to the present site, and erect thereon a plain, modern, commodious building, designed, with the use of the present courthouse, to provide adequate

facilities for the transaction of the public business, and the preservation of the public records." This return was read in open court, and given a place in the public records. At the following December Sessions, the matter was again submitted to the new grand jury in a charge by Judge REPPERT, and a report approving the project was made in language practically the same as that found in the first return.

No formal order of approval was then made by the court of quarter sessions, Judge VAN SWEARINGEN having died, and the term of Judge REPPERT expiring in January. On August 10, 1926, the three judges then acting formally adopted both grand jury reports, as of the date of their respective presentations. Thereupon the county commissioners by resolution agreed to proceed with the work, and presented a petition asking leave to buy the land required for the addition, and the purchase of one tract was consummated, with the approval of the court. As to two tracts no reasonable price could be agreed upon, and, after the passage of the requisite resolutions to condemn, a petition was presented asking for the appointment of viewers to assess damages. Three disinterested freeholders were chosen, and a bond to protect the property owners was given and approved. Within a few days thereafter one Patterson, whose land was condemned, presented his petition asking that the proceeding be set aside for various reasons which we shall consider separately. The application was dismissed, and it is from this order the present appeal has been taken.

It is insisted that the court was without jurisdiction to approve the findings of the two grand juries, since the exact language of the statute authorizing action by such bodies was not used in the reports filed. In both cases the necessity for the improvement was pointed out with a statement made of many reasons why the new structure should be erected, and the commissioners were asked to either purchase or condemn such land as was

required for the purpose. Appellant contends that in such cases the returns must follow the words of the act, and set forth "that the necessities of the county require ground at the county seat for the purpose of the [proposed building to be] erected." Bennett v. Norton, 171 Pa. 221, is cited as authority for this contention, but an examination of that case will show that it does not decide that a recital of facts equivalent in substance and meaning to the expression employed in the statute will not suffice. It was there held no purchase of land for courthouse purposes could be concluded without action by two successive grand juries.

Prior to 1883, under the Act of 1834 (April 15, P. L. 539), property could have been bought for such use, though no special suggestion to this effect had been made in the report. Since the date mentioned such a recommendation is required (Act, June 1, 1883, P. L. 58), and it is upon the latter legislation, as amended in 1911 (June 19, P. L. 1039) and again in 1921 (April 21, P. L. 271) the present proceeding is based. The report of the grand jury must show facts which plainly indicate the necessity for a new or extended building, and the act gives to the commissioners, after approval, the right to buy the necessary land. The repetition in the report of the exact phraseology found in the statute is not required to confer authority on officials of the county to purchase additional ground as is correctly stated in Brewer v. Delaware Co. Com., 18 Del. Co. R. 1. Judge ENDLICH said, in Reports of Grand Jury, 20 Dist. R. 867, where the court's approval was withheld for a different reason: "If upon the reports of the grand jury an implication fairly arises of an intent to find a necessity, and to confer upon the commissioners authority for acquisition by them of such additional land as they, in the exercise of their lawful discretion, may determine, ......" it is sufficient. The returns now before us satisfy the legal requirements.

If the property required "cannot be obtained by agreement with the owner or owners, or at a price reasonable in the estimation of said commissioners," the court of common pleas is given power to appoint viewers to assess the damages. It will be observed that the initiative in a proceeding such as is now presented does not rest with the county commissioners, but the first step is action by the grand jury, followed by approval of the court. This was true under the Act of 1834 already referred to (Com. v. Marshall, 3 W. N. C. 182) and is plainly directed in the Act of 1921. The commissioners in the present case awaited the action of the court on the grand jury reports, and then proceeded in an attempt to purchase, and finally to condemn, in the manner directed by the controlling statute.

It is, however, urged that the approval of the returns by the court on August 10, 1926, was too late, and, therefore, ineffective. A consideration of the appropriate legislation leads to the belief that it was never intended that the first grand jury report should be immediately acted on. The thought was that the public should be thus informed of possible action, and be given the opportunity to object before the meeting of the succeeding official body and lodge any objections they might have: Northampton Commissioners' App., 57 Pa. 452. It is not necessary that the various steps required by the statute be more than reasonably continuous. So, it has been held that a delay of three years, caused by the existence of war, did not prevent subsequent approval by the court: Brewer v. Delaware County Com., supra. If, however, a long period of time is permitted to elapse, and, as a result, persons interested are led to believe the project has been abandoned, a new proceeding must be instituted: Pittsburgh, etc., R. Co. v. Lawrence Co., 198 Pa. 1; Com. v. Baker, 212 Pa. 230.

Of course, if a statute fixes a definite period during which an act must be performed, action thereafter will be ineffective: Harris v. Mercur, 202 Pa. 313. But no

time for approval is designated in the Act of 1921, and under the circumstances here appearing the order made on August 10, 1926, must be held to be without undue delay. Judge VAN SWEARINGEN had died after the first report, and the term of Judge REPPERT expired on January 1, 1926, before a successor to the former had been selected. The new court, composed of three members, was later organized, and we cannot say that they did not within a reasonable time consider the matter left by their predecessors in office. The fact that the orders, dated August 10, 1926, were marked respectively nunc pro tunc as of the dates of the filing of the grand jury returns is immaterial. Such reference back was unnecessary, and to be treated at most as surplusage.

A third objection to the proposed condemnation has been raised by the property owner, present petitioner, who asks to have the appointment of viewers vacated. The county commissioners were authorized by statute to so proceed, when the necessary land could not be secured by purchase or at a price deemed fair by the officers to whom the power to buy or condemn had been delegated. The court has found as follows: "Prior to their application to this court for the appointment of viewers, the commissioners were unable to obtain the Patterson lot of ground by agreement or at a price reasonable in their estimation after interviews and negotiations to that end with the owner by themselves and through their solicitor." This conclusion is justified by the evidence, and is therefore not to be disturbed by us: Miller v. Central Trust & Savings Co., 285 Pa. 472.

Again, it is said there is no need to take the land of petitioner to build the new structure, since ample other property has been secured. The determination of this question is primarily for the commissioners, subject to the approval of the court, which was obtained, and it has also found as a fact in this proceeding that "the said Patterson lot of land is necessary for use in the erection of such a building as is necessary for the accommodation

of the courts and of the several officers of the county and for the reception and safe-keeping of the records and other papers in charge of such officers." "Under a delegation of the power of eminent domain the grantee of the power, in the absence of legislative restriction, may determine the location of the land [to be] acquired, and such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respect beyond the privilege conferred by the charter or statute. The landowner cannot raise the objection that there is no necessity for condemning the property because some other location might be made": 20 C. J. 632; Biddle v. Wayne Water Works, 190 Pa. 94. Just as the directors of a railroad are made the judges of the necessity for the taking of land for corporate purposes, which they have a statutory right to condemn (Pitts. Junc. R. R. Co.'s App., 122 Pa. 511; Pittsburgh, etc., Ry. Co. v. Peet, 152 Pa. 488; Johnston v. Callery, 184 Pa. 146; Foley v. Beech Creek R. R. 283 Pa. 588), so in this case the same discretion is confided to the commissioners, subject to sanction by the court. Moreover, this power is not limited to present necessities; provision may also be made for apparent future needs: Chew v. Phila., 257 Pa. 589.

After a careful consideration of the assignments of error, we are convinced that none can be sustained, and all are overruled.

The order of the court below is affirmed at the cost of appellant.