(No. 5517. July 19, 1930.)

GRANGEVILLE HIGHWAY DISTRICT, Respondent, v. JAMES F. AILSHIE and LUCIE AILSHIE, Appellants.

[290 Pac. 717.]

James F. Ailshie, for Appellants.

B. Auger, for Respondent.

W. D. Gillis, Attorney General, and Fred J. Babcock, S. E. Blaine and Harmon E. Hosier, Assistant Attorneys General, *Amici Curiae.*

GIVENS, C. J.—This action was brought by plaintiff to condemn a right of way for a state highway through defendants' farm. Defendants denied the necessity for taking this particular land and alleged that the highway which had been in use for over forty years is as convenient to the public as the proposed highway, and that its use would inflict much less injury upon the defendants.

Defendants' farm lies just east of the city of Grangeville. The present route of the highway, designated as the "N" route, follows Grangeville streets to the northwest corner of defendants' premises which it skirts on the north side. It contains several curves.

It is proposed by the plaintiff to run the new highway, designated as the "S" route, over a new grade in an easterly direction through Grangeville. As it approaches the city limits the route veers to the north in a wide curve at an angle of eight degrees, enters defendants' farm near the southwest corner and crosses it in a diagonal direction.

A third route has been proposed by the defendants,

designated as the "A" route. It follows the "S" route to the point where the latter enters defendants' farm but instead of traversing it diagonally skirts it on the west and north sides. It contains two curves, one of them right angled, around the northwest corner of the farm of defendants, who have offered to donate to the respondent enough land to establish this curve on a radius of 507 feet, a standard curve for federal aid highways.

The "N" route is 153 feet longer and the "A" route 523 feet longer than the "S" route. The "N" route has a plus one per cent grade. Both the "A" and "S" routes have grades varying up to eight per cent. The additional cost of construction for either the "N" route or the "A" route over the cost of the "S" route would not exceed $1200.

It is appellants' contention that the "S" route running through their farm will largely destroy its usefulness and that respondent in so locating it acted arbitrarily and capriciously. Only two out of six forties in the farm are well adapted to wheat raising and the proposed road runs diagonally through these forties.

The "S" route was laid out by state highway engineers and approved by federal highway engineers. The evidence also shows that the practice in modern highway engineering is to build roads as short as possible and as straight. Curves are eliminated as much as possible, particularly on gravel roads, not only because straight roads are considered safer but also because they are cheaper to maintain. A "surprise" curve at the end of a six-mile straightaway which the "A" route calls for is considered dangerous. Furthermore, on a gravelled road, the gravel on a curve tends to fly off the road, increasing the maintenance expense.

It further appears from testimony offered on behalf of respondent that if the "A" route is used, one of the curves will have to be changed or it will pass through a house.

The trial court personally examined the routes and appellants' premises and exhaustively considered the merits of

the respective routes and the injury to appellants, then found for the respondent and ordered the land condemned. The court made a specific finding as to the injury to appellants as follows:

"That the land sought to be taken and hereinabove described is located in the manner which will be most compatible with the greatest public good and the least private injury."

Part of the proposed new highway lies in the city of Grangeville. The land sought to be condemned, however, is entirely outside the city limits. Consequently it is unnecessary to consider the respective rights of the city and the respondent highway district.

The state of Idaho, the United States and the respondent have entered into a joint contract for the construction of the road and the apportionment of the cost of construction. This the district was authorized to do by chap. 181, 1923 Sess. Laws, p. 281. C. S., sec. 1507, expressly provides that highway districts may construct their own roads or provide by contract for their construction. C. S., sec. 1578, authorizes the department of public works to enter into agreements with highway districts for the joint construction of highways. It is further provided:

"Before the department shall contract with a county or district for the construction of a highway, the right of way therefor shall first be acquired by the county or district."

This clearly indicates that where highways are jointly constructed, the district is empowered to condemn a right of way. It is true that in this case the joint agreement was apparently entered into prior to the acquisition of the entire right of way, contrary to the provisions of the statute above cited. However, appellants have made no attempt to show that they have been injured by the respondent's failure to complete the acquisition of the right of way prior to making the contract. The contract has been entered into. That is the essential thing, and the fact that the joint enterprise was agreed upon before the entire right of way

had been acquired does not invalidate the condemnation proceedings.

In *Benat v. Dallas County*, (Tex. Civ. App.) 266 S. W. 539, it was held that the county commissioners of Dallas county had no authority to condemn land within the corporate limits of Dallas. This case is clearly distinguishable from the case before us, because here the land which the district is attempting to condemn is outside the limits of any municipal corporation but within the district limits.

The right of the legislature, or its designated agents, to take land by eminent domain proceedings is plenary, save only as they may be restricted by the Constitution or a statute. (*Stearns v. Barre*, 73 Vt. 281, 87 Am. St. 721, 50 Atl. 1086, 58 L. R. A. 240; *Benat v. Dallas County, supra.*) No restrictive provisions, applicable to the facts of this case, appear in our Constitution.

By C. S., sec. 1507, the legislature has delegated this power to highway districts. This section provides that the board of commissioners of highway districts "may change the width or location or straighten lines of any highway in such district" and if necessary condemn land for such purposes. Condemnation proceedings are to be brought under C. S., secs. 7404–7423 (chap. 270).

This chapter defines the procedure to be followed in emiment domain proceedings. C. S., sec. 7407, in so far as it is here applicable, is as follows:

"Before property can be taken it must appear: 1. That the use to which it is to be applied is a use authorized by law. 2. That the taking is necessary to such use."

C. S., sec. 7408, provides that "in all cases where land is required for public use the state or its agents in charge of such use may survey and locate the same, but it must be located in the manner which will be most compatible with the greatest public good and the least private injury."

It is apparent from these statutes that the right to determine the feasibility and necessity of a highway improvement for which land is sought by eminent domain proceed-

ings is with the highway district. (*Los Angeles County v. Rindge Co.*, 53 Cal. App. 166, 200 Pac. 27, affirmed in 262 U. S. 700, 43 Sup. Ct. 689, 67 L. ed. 1186; *City of Pasadena v. Stimson*, 91 Cal. 238, 27 Pac. 604; *Depue v. Banschbach*, 273 Ill. 574, 113 N. E. 156; Lewis on Eminent Domain, secs. 595, 597.)

 The determination of the necessity of taking the particular piece of land sought is another question and by the great weight of authority ultimately a judicial question on which the defendant in an eminent domain proceeding is entitled to a hearing. (*Chicago v. Lehmann*, 262 Ill. 468, 104 N. E. 829; *Grafton v. St. Paul etc. Co.*, 16 N. D. 313, 15 Ann. Cas. 10, 113 N. W. 598, 22 L. R. A., N. S., ⁻; *Stearns v. Barre*, 73 Vt. 281, 87 Am. St. 721, 50 Atl. 1086, 58 L. R. A. 240; *State v. Superior Court*, 64 Wash. 189, 116 Pac. 855; note in 88 Am. St. 940; note in 65 A. L. R. 504.)

Our statutes and the decisions of this court are in harmony with these well-established principles. C. S., sec. 1507, provides that an order of the highway commissioners that land sought to be condemned is necessary for a public highway "shall be *prima facie* evidence of such fact," not conclusive evidence as the statutes of some states provide. (Cf. Cal. Code Civ. Proc., sec. 1241, as amended Stat. 1913, p. 549.) An appeal to the courts is evidently intended.

C. S., sec. 7407, provides that before property can be condemned it must appear that the taking was necessary. Construing this section of the statutes, this court in *Portneuf Irr. Co. v. Budge*, 16 Ida. 116, 18 Ann. Cas. 674, 100 Pac. 1046, said:

"The question of necessity is one that should be determined by the court *in limine* before appointing commissioners."

In *Washington Water Power Co. v. Waters*, 19 Ida. 595, 115 Pac. 682, 687, this court said:

"The judgment of the company seeking to condemn would be ordinarily safer and more reliable than would be the judg-

ment of any court. The court is to judge, as a matter of law in the first place, as to whether the use for which the condemnation is sought is a public use within the contemplation of the constitution or the statute. After that question is determined by the court, the question of the extent of the enterprise and the necessity for the taking should be in a large measure left to the judgment and discretion of the public agency seeking to make the condemnation. . . . . Of course this will always be subject to regulation and control by the court. It cannot be arbitrarily exercised in any case.''

This case is cited with approval in *Boise City v. Boise Development Co.*, 41 Ida. 294, 238 Pac. 1006. See, also, *Pasadena v. Stimson, supra,* construing identical statutes.

██ Although the question of necessity is ultimately a judicial one, it is not so in the first instance. The legislature, in the absence of constitutional restrictions, has the power to designate an agent to make the selection of necessary lands and to provide that such selection shall be *prima facie* evidence of its necessity. (*Los Angeles County v. Rindge Co., supra.*) Only in the face of convincing evidence that these officials have abused their discretion or are guilty of actual fraud should we interfere. (*Pasadena v. Stimson, supra; Depue v. Banschbach,* 273 Ill. 574, 113 N. E. 156; *Petition of Fayette County Commrs.,* 289 Pa. 200, 137 Atl. 237; *State v. Superior Court,* 64 Wash. 189, 116 Pac. 855; *State v. Superior Court,* 144 Wash. 124, 257 Pac. 231; *State v. Superior Court,* 148 Wash. 203, 268 Pac. 603; 20 C. J. 632.)

██ The condemnor must show only a reasonable, not an absolute, necessity. (*State v. Superior Court,* 64 Wash. 189, 116 Pac. 856; *Piedmont Cotton Mills v. Georgia Electric Co.,* 131 Ga. 129, 62 S. E. 52; Lewis on Eminent Domain, sec. 601.)

██ Furthermore, the defendant cannot prevail merely by showing that there is other land in the immediate neighborhood available and equally useful. (*State v. Supe-*

*rior Court*, 62 Wash. 612, 114 Pac. 444; *Petition of Fayette County Commrs.*, 289 Pa. 200, 137 Atl. 237; Lewis on Eminent Domain, sec. 604.)

Appellants rest their case on three propositions; first, that there was no survey of other possible routes. This is disproved by the record. There may not have been a complete survey but one of the engineers for the respondent testified that he had looked into the feasibility of the "A" route and it had been surveyed. Furthermore, as shown by the authorities cited above, the fact that another route is available does not rebut the *prima facie* case that land selected by the condemnor is necessary for its purpose. As said in *Hyattsville v. Washington etc. Co.*, 122 Md. 660, 90 Atl. 515, 519:

"We cannot agree with the appellant's construction of what the law means when it speaks of it being necessary to acquire certain property. When a railroad company can adopt one of two or more routes between its termini, it could never exercise the power of eminent domain if appellant's contention is correct. If it undertook to condemn property along one route, the owners could contend it was not necessary, because it could take another route, and if it adopted the other route, the owner there could go through the same obstructive process."

Secondly, it is claimed that other routes, from an engineering standpoint, are better. For instance, that the grade on the "N" route is a plus one per cent grade, while on the "S" route and the "A" route it approaches eight per cent. At this distance and on paper these facts seem significant, but they are primarily engineering and we should hesitate to substitute our judgment for the judgment of the highway engineers, particularly in view of the fact that the trial judge, after viewing the premises and all routes, concurred with them. (*Washington Water Power Co. v. Waters, supra.*)

Thirdly, appellants urge that curves such as engineers are attempting to eliminate on this route are found

in other state highways. This is of little significance in view of the varying topography of the state. Furthermore, respondent's engineers frankly admitted that mistakes had been made in the past and we may take judicial notice of the fact that everywhere highways are being straightened and curves eliminated.

The evidence shows that if the land of defendants is condemned, four acres of fertile soil, capable of producing fifty to sixty bushels of wheat, will be destroyed. There is, however, no showing that this farm is any different from any other in the same general locality except perhaps that the land taken is free from rock while the balance of the farm is rocky.

The assessment of adequate compensation is not now before us.

Appellants insist that the highway engineers acted in an arbitrary and capricious manner in selecting their land for condemnation in that no consideration was given the phrase in C. S., sec. 7408, that land to be taken by condemnation must be located in the manner most compatible with "the least private injury," and cite several cases in support of this contention. The evidence shows consideration was given the question of the least private injury. At most, if the route suggested by appellants were followed, it would in part shift the burden to other lands.

Appellants have failed to show such an abuse of discretion or actual fraud on the part of those charged with the selection of a route as would warrant our refusing to accept their judgment. In this connection, we call particular attention to *State v. Superior Court*, 111 Wash. 542, 191 Pac. 413. (See, also, *Department of Highways v. Stepp*, 150 Tenn. 682, 266 S. W. 776; *State v. Superior Court*, 148 Wash. 203, 268 Pac. 603.)

The judgment is affirmed. Costs awarded to appellants.

Lee, Varian and McNaughton, JJ., concur.

Petition for rehearing denied.

BUDGE, J., Dissenting.—It appears from the record that appellants' land has contributed a right of way for a public road along the west side of their premises and also a right of way for a road along the north side. These public roads have been traveled for some period of time. It is proposed through the present proceeding to construct an additional road diagonally through two forty-acre tracts of appellants' land, such forties being the only two tracts of appellants' entire acreage that are free from rock and scab and which produce crops of any great value. As high as from forty to sixty bushels of wheat per acre were shown to have been grown upon these two forties at the time of the institution of the condemnation proceedings.

I am not satisfied, after a careful consideration of the entire record, that appellants are being fairly dealt by in the proceeding before us. I am not able to bring myself to agree with the conclusions reached by my associates, viz., that there is a necessity for the construction of the proposed additional highway diagonally through appellants' lands. I am convinced that this serious injury and great damage to appellants' property could be avoided by the selection of a different route, one that would not practically destroy or unreasonably depreciate the value of appellants' farm and yet answer every public need.

The route described as route "A," proposed and designated by appellants, would furnish a road suitable for public travel. The curve of 507 feet in route "A" is a standard curve in federal aid highways. While I appreciate the importance of straight roads where practicable, consideration should be given to circumstances of unusual and unnecessary hardships to property owners, to the end that while the public be served it be at a minimum detriment to property owners. In other words, the provisions of C. S., sec. 7408, should not be lightly regarded, viz.:

"In all cases where land is required for public use the state or its agents in charge of such use may survey and locate the same, but it must be located in the manner

which will be most compatible with the greatest public good and the least private injury. . . . . ''

In my opinion the application of this principle has been lost sight of in the instant case, appellants being called upon to sustain unnecessary private injury in an attempt to accomplish the greatest public good.