(No. 6237.   May 10, 1935.)

STATE OF IDAHO, on Relation of G. E. McKELVEY, Commissioner of Public Works of the State of Idaho, Respondent, v. JAMES L. BARNES et al., Defendants; MURTAUGH HIGHWAY DISTRICT, Intervenor and Appellant.

[45 Pac. (2d) 293.]

J. H. Barnes, for Intervenor and Appellant.

Bert H. Miller, Attorney General, Leo M. Bresnahan, Assistant Attorney General, and Harry Benoit, for Respondent.

AILSHIE, J.—On December 11, 1934, plaintiff commenced this action for the purpose of condemning a right of

way for a state highway across certain lands of the defendants, situated in Murtaugh Highway District, intervenor. It is stated by the complaint that this highway is "a part and link of the established highway system . . . . commonly known as the Old Oregon Trail Highway, U. S. No. 30, extending between the City of Burley and the City of Twin Falls," and being a portion of the federal and state highway system through that locality. On December 29, 1934, the Murtaugh Highway District obtained leave to, and did, file a complaint in intervention, setting up its corporate existence as a highway district; and that the lands and the highway mentioned in the complaint were all in the corporate limits of intervenor, and that the "plaintiff in intervention enters into this action for the purpose of uniting with the above named defendants in resisting the claims of the above named plaintiff"; and then proceeds to plead various facts setting forth why it claims that the plaintiff should fail and the defendant should succeed in the condemnation proceeding. The matter was heard in open court on January 7, 1935. Prior to entry upon the trial plaintiff filed a motion to strike the complaint in intervention, the gist of which appears to constitute the contention that "under the provisions of Sec. 13–709 ICA" intervenor "has no right to appeal or defend in this proceeding since the said intervenor does not show that it is in occupation of or claims any interest in any of the property described in the complaint or in the damages for the taking thereof." The order of the court subsequently entered contains the following recitals and judgment:

"Before the trial of this action, the Murtaugh Highway District obtained from this court an *ex parte* order permitting it to file a complaint in intervention herein. Before going to trial, the plaintiff presented a motion to strike said complaint in intervention, and in support of said motion cited section 13–709 ICA. The intervenor resisted said motion, and in support of its position cited sections 13–719 and 5–322 ICA. The court reserved its ruling on said motion, but later in the day sustained said motion to strike,

relying on subdivision 2 of section 13–710 ICA, to which action of the court said plaintiff in intervention duly excepted.

"Wherefore it is ordered and adjudged that the complaint in intervention of the Murtaugh Highway District be, and the same hereby is stricken, and that the action of said Murtaugh Highway District be and the same hereby is dismissed, upon the ground and for the reason that said district has no claim to the property sought to be condemned and/or to the damages therefor."

Two principal contentions appear to have been urged by plaintiff upon the attention of the court and are presented here in support of the trial judge's order; they are:

(a) That the right of intervention provided for in sec. 5–322 ICA does not apply to condemnation proceedings under the eminent domain statutes, secs. 13–701—13–720 ICA.

(b) That, if the right of intervention does exist, nevertheless intervenor disclosed no such right in the present case for the reason that it appeared on the face of the complaint in intervention "that the said intervenor has in fact no interest in any of the property described in the complaint in this action or proceeding, and does not show that it is entitled to any damages whatever for the taking thereof."

The court appears to have adopted the latter contention since it will be seen from his order that he predicated the same "upon the ground and for the reason that said district has no claim to the property sought to be condemned and/or to the damages therefor."

■■ The statute (sec. 5–322 ICA) grants the right of intervention in both "actions" and "proceedings" and extends that right to "any person . . . . who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both," and authorizes such intervenor to either join "the plaintiff in claiming what is sought by the complaint" or to unite "with the defendant in resisting the claims of the plaintiff," or to assert a demand "adversely to both the plaintiff and the defend-

ant.'' Condemnation is a "special proceeding" provided by chap. 7 of title 13 of the Code of Civ. Proc.

In this case the highway district, in which it is proposed to construct the road for which condemnation is sought, intervened for the purpose of opposing the relief sought by the plaintiff and supporting the contention made by the defendant. There is no room for doubt but that the intervention statute (sec. 5-322 ICA) applies to proceedings in condemnation. This brings us to the further inquiry as to whether or not the intervenor, Murtaugh Highway District, has such an interest in the matter in litigation, in the success of either of the parties, or such an interest against both as will entitle it to intervene. This statute should be, and has been, given a liberal construction. (*Potlatch Lumber Co. v. Runkel,* 16 Ida. 192, 101 Pac. 396, 18 Ann. Cas. 591, 23 L. R. A., N. S., 536.)

The hearing in which the highway district desired to participate and from which it was excluded was not the assessment of damages or fixing of the compensation to be allowed the land owner, but was rather the primary issue which has to be determined in all these cases, namely, *the necessity for the taking.* (*Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046, 18 Ann. Cas. 674; *Washington Water Power Co. v. Waters,* 19 Ida. 595, 115 Pac. 682; *Grangeville High. Dist. v. Ailshie,* 49 Ida. 603, 290 Pac. 717.) The fixing of compensation either by appraisers or a jury cannot be entered upon until the court has first determined that (a) the proposed taking is for a public use; (b) that it is necessary; (c) that the use and manner proposed will be "most compatible with the greatest public benefit (good) and the least private injury.'' (Secs. 13-703 and 13-705 ICA.)

The highway district contends that it has a right to be heard on the question of location of highways and that the questions of "public benefit" and "private injury" are matters upon which the district is the *corporate representative of all the residents and taxpayers of the district,* and as such not only has a right but is impressed with the

duty to appear and participate in all matters of condemnation of property for roadways within its territorial limits. Plaintiff, on the other hand, contends that the Department of Public Works has the absolute right to lay out and condemn rights-of-way for state highways and that the highway district, through which it is proposed to locate and construct such highways, has no voice whatever in the matter and is not entitled to a hearing on the subject. If the state's position is correct on this contention, of course the action of the trial judge should be affirmed. It will, therefore, become necessary to consider the nature and character of a highway district and some of the principal statutes conferring powers and imposing duties upon the Department of Public Works and the commissioners of highway districts, respectively.

Under sec. 39–1518 ICA, a highway district "is a body politic and corporate, and, as such, has the power specified in this chapter (39) or in other statutes, including the power of eminent domain," etc.

Section 39–1521 confers numerous general powers upon the commissioners of highway districts and among other things provides:

"The highway commissioners in such highway district shall constitute the highway board, and shall have, except as provided in section 39–1580, *exclusive general supervision and jurisdiction over all highways within their district,* with full power to construct, maintain, repair and improve all highways within the district, . . . . "

Section 39–1580, to which reference is made in the foregoing quotation, has special reference to the territory and inhabitants of municipalities included within highway districts and has no special bearing upon the case under consideration.

Section 39–1523 defines the jurisdiction and powers of highway district commissioners and among other things contains the following provisions:

"In respect to all highways included within such district, the power and jurisdiction of the highway board

shall be inclusive [exclusive], except as provided in section 39–1580; provided, however, that if any *main trunk or main highway connecting different parts of the county or connecting with territory outside of the state pass through such highway district, that said highway commissioners shall keep said road in good and sufficient and proper repair* and if they fail to do so, the board of county commissioners may at any time, by giving them ten days' written notice sent to them by registered mail, require that such main or trunk road, running through such district, or connecting said district with other territory, shall be repaired or put in proper condition which condition shall be specified in said notice by the county commissioners, and if said highway districts do not start said work or repair said road and put the same in the condition required by the county commissioners within ten days and thereafter diligently pursue said work with a reasonable and sufficient force, the county commissioners of any county of this state, in which said highway district lies, may enter upon said trunk or main road and repair and put the same in such condition required of them of such highway district. Said county commissioners in doing said work shall keep strict and accurate account of the expenses of doing said work, and when said work is completed they shall certify the amount thereof to the county treasurer who shall charge the same against the highway district and thereafter deduct said sum from any funds coming into his hands belonging to highway district and pay the general road fund of such county.''

Section 39–1525 provides that the powers granted to highway districts and highway boards *"shall be liberally construed, as a broad and general grant of powers, to the end that the control and administration of such districts may be efficient,"* etc.

Section 39–1527 contains this significant sentence: *"In all courts, actions, suits or proceedings, the said board may sue, appear and defend, in person or by attorneys, and in the name of such highway district."*

The statutes conferring powers upon the State Highway Department contain among other things the following:

"Sec. 39-2107—All highways taken over, improved or constructed by the department of public works, including highways constructed jointly with the assistance of a county or highway district, or good roads district, are state highways and shall be maintained at the sole expense of the state, unless a part thereof shall be or become a part of a city or incorporated village having a population of more than 2500 inhabitants."

"Sec. 39-2108—The department of public works is authorized to enter into an agreement with the board of county commissioners of any county, the board of highway commissioners of any highway or good road district, through which a state highway is planned, to assume the maintenance of any existing highway, or jointly to improve any existing highway or to construct a new highway or any part or portion thereof.

"Right of way for any such highway to be improved, altered or constructed by cooperation of the department of public works with any county, good road district or highway district may be procured, either at the time of or after the making of such cooperative contract, by the department of public works, the county, the highway district or good road district, jointly or severally."

Section 65-3101 prescribes the powers and duties of the Department of Public Works, and subdivisions 5, 6 and 7 thereof are as follows:

"5. To lay out, build, construct and maintain state highways at any place within the state of Idaho.

"6. To improve, alter or extend any state highway heretofore or hereafter laid out or constructed.

"7. To purchase, condemn or otherwise acquire the necessary lands for rights of way, turnouts, fills or excavations for state highways."

Section 39-2104 contemplates the submission of any planned system of state highways to the succeeding legislature. That section reads as follows:

"The department of public works shall provide for a system of state highways which shall be main trunk lines connecting the larger centers of population, . . . . and shall prepare and adopt plans for such system of main trunk lines of roads and highways, and include in its report to the governor made next before the session of the legislature, such plans for such system of main trunk lines or highways as proposed or adopted by said department of public works from time to time, and the legislature may add to, amend or modify such plans or system of trunk highways."

The foregoing constitute the principal statutory authority of highway districts and of the state department of public works with reference to construction, supervision and control of public roads and highways.

When considered altogether it seems clear that the "supervision and jurisdiction over all highways within their district" is conferred upon the commissioners of the highway district; and it is equally clear that highway districts may appear "in all courts, actions, suits or proceedings" involving the highways of the district, and "may sue, appear and defend" in any action or proceeding involving any highway of the district. It is also true that the Department of Public Works is authorized and has the power to lay out, build, construct and maintain highways and to alter or extend any state highway heretofore constructed, and to that end to purchase or condemn necessary lands. We are not here concerned with the question as to whether any conflict may arise between a highway district and the Department of Public Works over the exercise of the powers conferred by these respective statutes; nor as to just when, where or whether the powers of the one may supersede those of the other in the event of conflict. It is sufficient, for our present purposes, to say that we entertain no doubt of the right of the highway district, the corporate representative of the people, to intervene and be heard in litigation involving the condemnation of rights of way for highways, and the laying out, alteration and change thereof. It would seem that, since the first

consideration in highway matters is the service of the people within the district, and that maintenance of trunk lines must coordinate with the local service and convenience, the local district, through which the roads run, under the broad powers granted it, is and should be at all times entitled to at least a hearing on the questions of necessity and the greatest public good (secs. 13–703 and 13–705, ICA) in matters relating to either laying out, altering or changing main trunk lines or any other highways through its territory.

The judgment and order, denying the district the right to intervene, should be, and is, hereby reversed and the cause remanded with instructions to reinstate the petition in intervention. No costs awarded.

Givens, C. J., and Holden, J., concur.

Budge, J., sat at the hearing but did not participate in decision.

MORGAN, J., Concurring.—I concur in the reversal of the order appealed from, but desire it understood I am not prompted to do so, wholly or in part, by I. C. A., sec. 39–1525, wherein the legislature has attempted to dictate the construction to be placed on a statute. The legislature frequently loses sight of the fact that while it has power to make laws, it is the duty of the courts to construe them.

The lawmaking power of the state is provided for in art. III of the constitution, and that portion of it which has not been reserved in the people is vested in the legislature. The judicial department is created by art. V, section 2 of which is as follows:

"The judicial power of the state shall be vested in a court for the trial of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the supreme court as may be established by law for any incorporated city or town."

Article V, sec. 13, provides:

"The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; . . . . "

and art. II, which consists of but one section, is as follows:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

It is not, in the constitution, anywhere directed or permitted that the legislature, having enacted a law, shall dictate the interpretation or construction to be placed upon it. Therefore, I. C. A., sec. 39–1525, is void.