264 P.2d 687

INDEPENDENT SCHOOL DIST. OF BOISE CITY

v.

C. B. LAUCH CONST. CO. et al.

No. 7887.

Supreme Court of Idaho.

Dec. 18, 1953.

Taylor, and Keeton, JJ., dissented.

---

Anderson & Kaufman, Willis E. Sullivan, Boise, for appellants.

Maurice H. Greene and Raymond D. Givens, Boise, for respondent.

PORTER, Chief Justice.

The plaintiff initiated this action to acquire by right of eminent domain three parcels of land for school purposes. The land sought to be condemned lies south of Boise river, between the river and Whitney bench, and is located between Capitol Boulevard on the East and Sixteenth Street on the West in the City of Boise. Parcel No. 1 lies immediately west of Capitol Boulevard, contains 4.6 acres and is referred to as the Lauch tract. Parcel No. 3 lies immediately east of Sixteenth Street, contains 51.57 acres and is referred to as the Eiden tract. Parcel No. 2 lies between Parcels No. 1 and No. 3, contains 41.554 acres and is referred to as the Mutual Finance Company tract. Respondent seeks to condemn such lands for use with adjacent lands as a campus-type high school site, and proposes to develop the entire tract as a community educational-recreational area.

Prior to the trial of this action, the owners of the Lauch tract and the Eiden tract consented that a judgment be entered therein condemning their lands. The action was defended at the trial only by the owners of the Mutual Finance Company tract, the same being appellants, John W. Eagleson and Effa H. Eagleson, husband and wife, John W. Eagleson, Trustee, and Mutual Finance Company, a corporation. The cause was tried to the court sitting without a jury. The court made findings favorable to respondent and entered a judgment of condemnation against appellants. From such judgment appeal has been taken to this court.

At the outset of their brief, appellants state: "The sole issue in this case is whether or not the respondent School District, already owning 88.36 acres in the area in question, has shown a necessity for condemning and taking the additional 41.554 acres of land owned by appellants." The 88.36 acres referred to by appellants include the Eiden tract and the Lauch tract condemned by this suit; and approximately 31 acres known as the Johns property and 1.2 acres known as the Shearer property lying immediately west of Capitol Boule-

vard and purchased by respondent prior to this suit in connection with the procurement of the high school site.

An examination of the testimony and the exhibits in this case show that respondent, as early as 1941, recognized the growing inadequacy of its high school plant. Extended studies of the district's increasing needs were made by its Board of Trustees and by the Superintendent of Schools. The Board caused to be employed Mr. J. Frederick Weltzin, an expert from the University of Idaho, to study and report on the needs of the school system of respondent. Such reports were made in 1944 and 1949. A number of sites were investigated to determine their suitability for the erection of a high school with its auxiliary buildings and play fields to accommodate 2,500 or more anticipated high school students. The proposed selection of the mentioned lands as a site for a new high school plant was discussed by school authorities with various service clubs and other organizations; and literature on the subject was distributed to patrons of the schools prior to the final selection of the site by the Board of Trustees in 1949.

At the trial, the Superintendent of Schools testified at length concerning the reasonable necessity for the approximately 130 acres of land in question for the development of a campus-type high school site taking into consideration the existing needs and the presently foreseeable future needs of the district. In opposition, the Superintendent of Schools at Meridian, called by appellants, testified that 35 acres was sufficient ground for a high school of 2,500 students. Such witness further testified that the size of the grounds required was a matter of opinion.

It is well recognized in this state that after the court has determined the use for which the condemnation is sought is a public use, the question of the extent of and necessity for the taking should be left largely to the judgment and discretion of the public agency seeking to make the condemnation. In Washington Water Power Co. v. Waters, 19 Idaho 595, at page 610, 115 P. 682, at page 687, we said:

"The judgment of the company seeking to condemn would be ordinarily safer and more reliable than would be the judgment of any court. The court is to judge, as a matter of law in the first place, as to whether the use for which the condemnation is sought is a public use within the contemplation of the Constitution or the statute. After that question is determined by the court, the question of the extent of the enterprise and necessity for the taking should be in a large measure left to the judgment and discretion of the public agency seeking to make the condemnation. [Citations]. Of course, this will always be subject to regulation and control by the court. It cannot be arbitrarily exercised in any case."

In Boise City v. Boise City Development Co., Ltd., 41 Idaho 294, 238 P. 1006, the city was seeking to condemn land for the construction of Capitol Boulevard. This court approved the foregoing quotation from Washington Water Power Co. v. Waters, supra, and held that if the determination by the city of the land required for municipal purposes were made in good faith, it would not be interfered with by the courts.

In Grangeville Highway Dist. v. Ailshie, 49 Idaho 603, 290 P. 717, this court quoted with approval our foregoing quotation from Washington Water Power Co. v. Waters, supra; and the court held that the right to determine the necessity of highway improvement for which land is sought by eminent domain proceedings is with the highway district, and that the court should not interfere with the selection made except for an abuse of discretion by the officials or actual fraud.

In the recent case of Graham v. City of Tulsa, Okl.Sup., 261 P.2d 893, there was involved the condemnation of land for an extension of a city street. The court held in effect that the action of the city was fairly in the interest of the public in the sound discretion of the city officials, and in the absence of fraud, oppression or some definite abuse of discretion, the court would not interfere. To support its position the court cites, Grangeville Highway Dist. v. Ailshie, supra, and State ex rel. Stephens v. Superior Court, 111 Wash. 205, 190 P. 234.

Of the entire tract selected, respondent has acquired by purchase or condemnation approximately 37 acres on the east side and 51 acres on the west side. Appellants' 41 acres lie in the middle between respondent's two tracts. It is largely pasture land and has only minor improvements. Respondent's proposed plan of development shows the location of the buildings generally in the middle of the entire tract and situated to a substantial extent upon the Mutual Finance Company tract. A failure by respondent to acquire appellants' land would seriously handicap and restrict the use of respondent's two tracts and the harmonious development of a campus-type high school facility.

■ Respondent is a public body proposing to expend public monies for school purposes. It is the right and duty of respondent in its planning to take into consideration not only its present school needs, but its reasonably foreseeable future needs. In Washington Water Power Co. v. Waters, supra, we recognized that a private corporation was entitled, when seeking to condemn property, to take into consideration anticipated increased future demands for the public service involved, and said:

"Again, there must be conceded to the condemning company some discretion as to the extent of the enterprise they will inaugurate, and the amount of investment they will make for the purpose of anticipating the future develop-

ment of the country, the increased population, and multiplied demands for the public service which they are about to inaugurate."

In the Reader's Digest for the month of December, 1953, there appears a thought-provoking article condensed from Time magazine entitled "The Great Baby Boom". The article considers the impact upon our economy of the large and unanticipated increase in the rate of growth of our population. It forcibly points out the great expansion which will have to be made in the next few years in our private industrial plants and in our public facilities such as public schools.

[redacted] We do not find in the record any evidence of fraud, oppression or abuse of sound discretion by the Board of Trustees of respondent in evaluating their present and reasonably anticipated future need for the land sought to be condemned as part of a site for a high school plant.

[redacted] Furthermore, we have uniformly held that where, as here, there is substantial, though conflicting, evidence to support the findings of the trial court, such findings will not be disturbed on appeal. Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589; Moss v. Vest, 74 Idaho ——, 262 P.2d 116; Conley v. Amalgamated Sugar Co., 1953, 74 Idaho ——, 263 P.2d 705.

[redacted] Appellants also contend that the court committed prejudicial error in sustaining objections to the testimony of the witness for appellants, Grover C. Sullivan, and in rejecting their offer to prove by such witness that 35 acres were sufficient for a high school of 2,500 students. The court denied the offer of proof on the ground that the witness had not shown himself qualified as an expert. An examination of the qualifications of the witness discloses that he was without experience in the building and development of a high school approaching the size of the one in question. His opinion, if admissible and admitted, would have been of such slight weight as evidence that the court's rejection of same would not sustain a finding of reversible error.

The judgment of the trial court is affirmed. Costs awarded to appellants. Portneuf-Marsh etc. Co. v. Portneuf Irr. Co., 19 Idaho 483, 114 P. 19; Washington Water Power Co. v. Waters, supra; Rawson-Works Lumber Co. v. Richardson, 26 Idaho 37, 141 P. 74; Bassett v. Swenson, 51 Idaho 256, 5 P.2d 722.

BAKER and ANDERSON, District Judges, concur.

TAYLOR, Justice (dissenting).

In my opinion, no reasonable necessity is shown for the taking of so much land.

KEETON, Justice (dissenting).

The plaintiff school district now owns 88.36 acres of land acquired as a school site and seeks in this proceeding to acquire

41.554 acres more contiguous to the land already acquired, intended ultimately to accommodate approximately 2500 students. Besides land necessary to construct school buildings, plaintiff desires land on which to construct a gymnasium to seat 5000 spectators; three or four football fields; ten to fifteen acres for a band drill area, four baseball fields, possibly a golf course, two soccer fields, eight basketball courts, twenty tennis courts, four volley ball courts; space is also desired for croquet, ten to twenty horseshoe pits, tag games, picnic grounds, skating areas; fifteen to twenty acres for parking purposes, space for nature study and other purposes.

In my opinion the acquiring of the additional acres of ground for the purposes contemplated is unnecessary and no reasonable necessity has been shown. The total land sought to be acquired would be spacious enough to accommodate some of the large universities of the United States. Statutes authorizing the taking of private land for public purposes, under prescribed conditions, never contemplated that a school district would be permitted to go into the real estate or parking business.

The fact, if it is a fact, that the land sought to be acquired is mostly unimproved farm land is of no importance. The question is, does a public necessity exist? In my opinion the contention of plaintiff cannot be upheld.

The judgment should be reversed and the proceeding dismissed.